A06A1696. MAYS et al. v. ELLIS et al.
(641 SE2d 201)

ELLINGTON, Judge.

In this medical malpractice case, Sharon Ellis[1] sued Wallace D. Mays, M.D., and his practice, Wallace D. Mays, M.D., P.C. (collectively, "Mays"), alleging that Mays misdiagnosed her pancreatitis and, as a result, performed unnecessary abdominal surgery. Mays filed a motion to exclude the testimony of Ellis' expert witness, contending the witness was unqualified to testify under OCGA

---

[1] Mrs. Ellis' husband also asserted a claim for loss of consortium.

§ 24-9-67.1. The trial court denied the motion, but signed a certificate of immediate review. We granted Mays' application for interlocutory appeal.

Without recounting in this opinion all of the facts leading to Mays' alleged misdiagnosis of Ellis' condition, the following undisputed facts are relevant here. Mays is an obstetrician/gynecologist ("OB/GYN"), and Ellis was one of his patients from 1987 until 1998. Throughout that period, Ellis had hyperlipidemia, and she had a family history of pancreatitis. Mays did not refer Ellis to a specialist to evaluate her chronic hyperlipidemia. During an office visit in July 1998, Ellis complained of pain in her lower right abdomen. Mays planned to perform laparoscopic surgery to remove Ellis' right ovary at the end of August. Mays referred Ellis to an internist for a pre-operative examination. A few days before the scheduled surgery, the internist determined that Ellis had "markedly elevated" triglyceride, cholesterol, and blood glucose levels which needed to be under control before the surgery. Mays cancelled the laparoscopic surgery.

A few days later, on August 30, Ellis went to a hospital emergency room after experiencing three days of worsening abdominal pain, tenderness, nausea, and vomiting. Mays examined Ellis and concluded that her symptoms indicated either appendicitis or an ovarian torsion. He did not consider pancreatitis as part of his differential diagnosis, nor did he consult with a specialist about Ellis' symptoms, even though he was aware that Ellis had had abnormal lab results a few days before that showed markedly elevated triglyceride, cholesterol, and blood glucose levels. Mays performed emergency exploratory surgery with the intention of removing either Ellis' ovary or appendix. During the surgery, Mays determined that Ellis had neither appendicitis nor an ovarian torsion. Another surgeon took over the surgery, and Ellis' condition was subsequently diagnosed as pancreatitis.

1. (a) On appeal, Mays contends that Ellis' expert witness is unqualified to testify in this case under OCGA § 24-9-67.1 (c) (2)[2]

---

[2] The relevant portions of OCGA § 24-9-67.1 (c) read as follows:

Notwithstanding the provisions of subsection (b) of this Code section and any other provision of law which might be construed to the contrary, in professional malpractice actions, the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the professional whose conduct is at issue, shall be admissible only if, at the time the act or omission is alleged to have occurred, such expert:

(1) Was licensed by an appropriate regulatory agency to practice his or her profession in the state in which such expert was practicing or teaching in the profession at such time; and

(2) In the case of a medical malpractice action, *had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given* as the result of having been regularly engaged in:

because the expert is a gastroenterologist, not an OB/GYN, and "a gastroenterologist is barred from testifying against an OB/GYN with regard to standard of care issues." Mays argues that, under OCGA § 24-9-67.1 (c) (2), an expert witness testifying in a medical malpractice case must be a specialist in the same area of practice or specialty as the defendant physician. This argument turns on the construction of the requirement that a physician testifying as an expert witness in a medical malpractice action must have "actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given." OCGA § 24-9-67.1 (c) (2).

At the time that this Court granted Mays' application for interlocutory appeal in March 2006, this phrase had not been construed by Georgia's appellate courts. In July 2006, however, this Court specifically considered and rejected Mays' argument. See *Cotten v. Phillips*, 280 Ga. App. 280 (633 SE2d 655) (2006). In *Cotten*, we noted that

> the plain meaning of [this] statute conveys best the legislative intent therefor. Here, the statute expressly provides that the expert must have "actual professional knowledge and experience in the area of practice or specialty *in which the opinion is to be given.*" . . . Had the General Assembly intended that only experts in the same area of practice/specialty as the defendant doctor be deemed qualified to provide expert testimony against those doctors, it could have plainly done so, as have legislatures in other states.

(Punctuation and footnotes omitted; emphasis supplied.) Id. at 284-285. This Court held that the statute's plain language "contemplates that the expert may very well have a different area of practice than the defendant doctor. Under the statute, it is the expert's qualifications, rather than the defendant doctor's specialty or area of practice, that controls whether the trial court should allow the expert's testimony." Id. at 285.

---

(A) The active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue; or (B) The teaching of his or her profession for at least three of the last five years as an employed member of the faculty of an educational institution accredited in the teaching of such profession, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in teaching others how to perform the procedure, diagnose the condition, or render the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue.
(Emphasis supplied.)

Accordingly, Mays' argument that a gastroenterologist is completely barred from offering expert testimony in a medical malpractice case against an OB/GYN must fail. *Cotten v. Phillips*, 280 Ga. at 285.

(b) Mays also argues that, under OCGA § 24-9-67.1 (c) (2), a gastroenterologist may not offer expert testimony in a medical malpractice case "involving the performance of a surgical procedure by a licensed OB/GYN" when the gastroenterologist is neither a surgeon nor an OB/GYN. The question presented, therefore, is whether the gastroenterologist in this case had "actual professional knowledge and experience in the area of practice or specialty *in which the opinion is to be given*" under subsection (c) (2). On this issue, this Court has concluded "that the statutory 'area of practice or specialty in which the opinion is to be given' is dictated not by the apparent expertise of the treating physician, but rather by the allegations of the complaint concerning the plaintiff's injury." *Abramson v. Williams*, 281 Ga. App. 617, 619 (636 SE2d 765) (2006).

In Ellis' complaint, she does not contend that Mays negligently performed the exploratory abdominal surgery on August 30. Instead, she claims that Mays negligently failed to timely diagnose her pancreatitis during July and August 1998 and failed to admit her to the hospital or refer her to a specialist for appropriate treatment of the condition. She also claims that, as a result of Mays' misdiagnosis, she suffered from unnecessary surgery, scarring, mechanical ventilation, and an extended hospital stay. In support of her claim, the gastroenterologist opined that Mays was negligent when he failed to recognize Ellis' symptoms of pancreatitis or even consider it as part of his differential diagnosis, admit her to a hospital for treatment, refer her to a specialist for further evaluation, or conduct additional tests prior to performing the exploratory surgery. The expert also opined that, if timely diagnosed, Ellis' pancreatitis could have been treated nonsurgically and, therefore, the surgery performed by Mays on August 30 was unnecessary.

Therefore, based upon Ellis' complaint, the ultimate issue to be decided at trial is whether Mays committed medical malpractice when he misdiagnosed Ellis' condition, not whether he performed the subsequent exploratory surgery in a negligent manner. The expert witness' testimony in this case clearly addresses only the alleged misdiagnosis and whether the surgery could have been avoided by a timely, accurate diagnosis. Accordingly, "the area of practice or specialty in which the opinion is to be given" in this case involves the diagnosis and treatment of pancreatitis, not the actual performance of exploratory abdominal surgery by an OB/GYN. *Abramson v. Williams*, 281 Ga. App. at 618.

There is evidence in the record to support a finding that Ellis' expert witness, a gastroenterologist, had the requisite knowledge and experience under OCGA § 24-9-67.1 (c) (2) to offer his opinion that Mays negligently misdiagnosed Ellis' pancreatitis; that if timely diagnosed, the condition could have been treated nonsurgically; and, therefore, Mays' misdiagnosis resulted in unnecessary surgery. Accordingly, we conclude that the trial court in this case did not abuse its discretion in allowing Ellis' expert witness to testify in this case. *Abramson v. Williams*, 281 Ga. App. at 619; *Cotten v. Phillips*, 280 Ga. App. at 283 (the admissibility of expert testimony rests in the broad discretion of the court and its ruling will not be reversed absent an abuse of that discretion).

2. Mays also contends that the expert's testimony fails to meet the reliability requirements of OCGA § 24-9-67.1 (b) and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993). The record does not show that Mays raised this objection in the court below or that it was ruled upon by the trial court. Accordingly, Mays may not raise this issue on appeal.[3] *Phillips v. State*, 269 Ga. App. 619, 623-624 (3) (604 SE2d 520) (2004).

3. Both parties' appellate briefs address the constitutionality of OCGA § 24-9-67.1 as applied to this case. The trial court did not expressly rule on the constitutionality of the statute in its order. Pretermitting whether this issue is moot in this case given our decision in Division 1, supra, we are unable to reach the merits of the parties' contentions. "Our Supreme Court has exclusive appellate jurisdiction over cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn into question, and will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point." (Punctuation and footnotes omitted.) *Griffin v. Burden*, 281 Ga. App. 496, 497 (2) (636 SE2d 686) (2006).

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED JANUARY 5, 2007 — ■■■■■■■■

---

[3] Even if this issue had been raised and argued below, we note that,

under *Daubert*, disputes as to an expert's credentials are properly explored through cross-examination at trial and go to the weight and credibility of the testimony, not its admissibility. . . . *Daubert*'s role of ensuring that the courtroom door remains closed to junk science is not served by excluding testimony such as this expert's that is supported by extensive relevant experience. Such exclusion is rarely justified in cases involving medical experts as opposed to supposed experts in the area of product liability.

(Citations, punctuation and footnotes omitted.) *Cotten v. Phillips*, 280 Ga. App. at 286.

*Chambless, Higdon, Richardson, Katz & Griggs, Emmitte H. Griggs, David N. Nelson,* for appellants.

*Akin & Tate, S. Lester Tate III, Vaughan & Evans, Donald C. Evans, Jr.,* for appellees.

*Huff, Powell & Bailey, Daniel J. Huff, Erica S. Jansen,* amici curiae.