S07A0738. NATHANS et al. v. DIAMOND et al.
(654 SE2d 121)

SEARS, Chief Justice.

The appellants, Increase and Joy Nathans, appeal from the trial court's grant of summary judgment to the appellees, Dr. Andrew Diamond, and Northside Ear, Nose and Throat, P.C. ("Northside ENT"). On appeal, the appellants contend that the trial court erred in ruling that their expert was not qualified to give an opinion in this case under the standards set forth in OCGA § 24-9-67.1 (c) and erred in ruling against their claims that OCGA § 24-9-67.1 is unconstitutional. For the reasons that follow, we find no merit to these contentions and affirm.

On March 19, 2003, Dr. Diamond performed surgery on Mr. Nathans to treat his obstructive sleep apnea. Shortly after the surgery, Mr. Nathans suffered bleeding in the lungs and respiratory distress, and he lapsed into a coma. On March 17, 2005, the appellants filed this medical malpractice action against Diamond. The appellants' complaint did not allege that Dr. Diamond negligently performed the surgery, but that he failed to adequately inform Mr. Nathans of the potential risks and complications of the surgery. The appellants attached an affidavit from Dr. David Goldstein to their complaint. Dr. Goldstein is a pulmonologist from Tampa, Florida. In the affidavit, he stated that Dr. Diamond "deviated from the standard of care in the informed consent in that he failed to adequately inform Mr. Nathans of the potential risks and complications of the surgical procedure, inclusive of, but not limited to, respiratory failure, aspiration and coma." On April 19, 2005, Dr. Diamond and Northside ENT answered the complaint, contending, among other things, that the appellants' complaint failed to comply with OCGA § 9-11-9.1. On July 29, 2005, the appellants filed an amended affidavit from Dr. Goldstein, and on September 2, 2005, the appellees filed a motion for summary judgment, contending that Dr. Goldstein was not qualified to give an opinion in this case under the standards set forth in OCGA § 24-9-67.1 (c), which had become effective on February 16, 2005. In their response to Dr. Diamond's motion for summary judgment, the appellants amended Dr. Goldstein's affidavit on September 30, 2005, and contended that OCGA § 24-9-67.1 (c) violated equal protection and due process; denied them access to the courts; violated the separation of powers; and could not be retroactively applied to the

appellants' case, as Mr. Nathans' injuries arose before the effective date of OCGA § 24-9-67.1 of February 16, 2005.

On February 15, 2006, the trial court held a hearing on the appellees' motion for summary judgment at which the trial court primarily addressed Dr. Goldstein's qualifications as an expert.[1] On February 28, the court granted summary judgment to Dr. Diamond and Northside ENT, ruling that, under OCGA § 24-9-67.1 (c), Dr. Goldstein was not qualified to give an opinion about "obtaining informed consent from a patient undergoing the procedures performed by Dr. Diamond in this case." As for the appellants' constitutional attacks on OCGA § 24-9-67.1, the trial court ruled that OCGA § 24-9-67.1 "is constitutionally applied in this case, which was filed by plaintiffs after the enactment of this new statute."

1. The appellants contend that the trial court erred in ruling that Dr. Goldstein was not qualified as an expert under OCGA § 24-9-67.1 (c) (2) (A).[2] For the reasons that follow, we conclude that the trial court did not err.

OCGA § 24-9-67.1 (c) provides, in relevant part, that, even if an expert is "otherwise qualified as to the acceptable standard of conduct of the professional whose conduct is at issue,"[3] the opinions of the expert will only be admissible in a medical malpractice action if the expert

> (c) (2) . . . had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in:
>
> (A) The active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue.[4]

---

[1] OCGA § 24-9-67.1 (d) provides as follows: "Upon motion of a party, the court may hold a pretrial hearing to determine whether the witness qualifies as an expert and whether the expert's testimony satisfies the requirements of subsections (a) and (b) of this Code section."

[2] To the extent that the appellants also contend that no expert affidavit is necessary to support their informed consent claim, the contention is incorrect. See *Ketchup v. Howard*, 247 Ga. App. 54, 62-63 (543 SE2d 371) (2000) (on informed consent claim, expert testimony is required to establish whether the particular risks of the surgery were known or should have been known).

[3] OCGA § 24-9-67.1 (c).

[4] OCGA § 24-9-67.1 (c) (2) (A).

In construing OCGA § 24-9-67.1 (c), the Court of Appeals has held, correctly we conclude, that the requirement that the expert have "actual professional knowledge and experience in the area of practice or specialty *in which the opinion is to be given*" means that the plaintiff's expert does not have to have knowledge and experience in the "same area of practice/specialty as the defendant doctor."[5] Instead, under the foregoing language, the issue is whether the expert has knowledge and experience in the practice or specialty that is relevant to the acts or omissions that the plaintiff alleges constitute malpractice and caused the plaintiff's injuries.[6] However, it is not sufficient that the expert have just a minimum level of knowledge in the area in which the opinion is to be given. Instead, the expert must have "regularly engaged in the active practice" of the area of specialty "in which the opinion is to be given" and must have done so "with sufficient frequency to establish an appropriate level of knowledge . . . in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue."[7] Moreover, even if the expert is generally qualified as to the acceptable standard of conduct of the medical professional in question, the expert cannot testify unless he also satisfies the specific requirements of subsection (c) (2). The foregoing considerations demonstrate that, in enacting OCGA § 24-9-67.1, the General Assembly intended to require a plaintiff to obtain an expert who has significant familiarity with the area of practice in which the expert opinion is to be given.

In the present case, we conclude that the trial court did not abuse its discretion in concluding that Dr. Goldstein was not qualified to give an opinion in this case.[8] Dr. Diamond, an otolaryngologist, is alleged to have "deviated from the standard of care in the informed consent in that he failed to adequately inform Mr. Nathans of the potential risks and complications of the surgical procedure." Thus, the area of specialty "in which the opinion is to be given" concerns the type of otolaryngology surgery performed on Mr. Nathans and the

---

[5] *Cotten v. Phillips*, 280 Ga. App. 280, 284 (633 SE2d 655) (2006). Accord *MCG Health v. Barton*, 285 Ga. App. 577, 581 (647 SE2d 81) (2007); *Mays v. Ellis*, 283 Ga. App. 195, 198 (641 SE2d 201) (2007).

[6] *Cotten*, 280 Ga. App. at 284; *MCG Health*, 285 Ga. App. at 581; *Mays*, 283 Ga. App. at 198.

[7] OCGA § 24-9-67.1 (c) (2) (A).

[8] OCGA § 24-9-67.1 (c) (2) (A) grants trial courts the authority to determine whether an expert is properly qualified, and authorizes trial courts to hold pretrial hearings, such as essentially occurred in this case, to make that determination. After such a hearing, a trial court's finding regarding an expert's qualification will only be reversed on appeal if the trial court abused its discretion in making its ruling. See *Cotten*, 280 Ga. App. at 283; *MCG Health*, 285 Ga. App. at 580.

risks associated with it.[9] Dr. Goldstein thus had to be qualified in this area of specialty by having actively practiced in that area "with sufficient frequency to establish an appropriate level of knowledge . . . in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue."

Although Dr. Goldstein's affidavit states that he has performed surgeries, he does not state that he has performed surgeries like the one in question or obtained informed consents for similar surgeries. Instead, he states only that he has consulted with other surgeons such as otolaryngologists, Dr. Diamond's specialty. Moreover, Dr. Goldstein's affidavit does not state that the surgeries that he has performed involved risks that are similar to the risks involved with the surgery that Dr. Diamond performed in the present case. In addition, although Dr. Goldstein states that he is familiar with the standard of conduct required of doctors in similar cases, this is insufficient by itself to satisfy the requirements of OCGA § 24-9-67.1 (c), as OCGA § 24-9-67.1 (c) specifically states that an expert who is generally familiar with the standard of conduct of the medical professional in question may only give an opinion in the case if the expert demonstrates the specific experience set forth in OCGA § 24-9-67.1 (c). For these reasons, we conclude that the trial court did not abuse its discretion in finding that Dr. Goldstein's affidavit failed to show that he had " 'actual professional knowledge or experience' in the area of obtaining informed consent from a patient undergoing the procedures performed by Dr. Diamond" and in finding that Dr. Goldstein's affidavit failed to establish that he had performed surgeries and obtained informed consents "with sufficient frequency to establish an appropriate level of knowledge" in performing the surgery in question and obtaining informed consents for that surgery.

Accordingly, the trial court did not err in ruling that Dr. Goldstein was not qualified to give an opinion under the standards set forth in OCGA § 24-9-67.1 and did not err in granting summary judgment to Dr. Diamond and Northside ENT.

2. The appellants contend that OCGA § 24-9-67.1 is unconstitutional in several respects. We conclude, however, that only one constitutional challenge is preserved for review and that that challenge is without merit.

"It is well established that this Court does not ever ' "pass upon the constitutionality of an Act of the General Assembly unless it clearly appears in the record that the point was directly and properly

---

[9] See OCGA § 31-9-6.1 (setting forth extensive nature of risks of the specific surgery of which the patient must be informed).

made in the court below and distinctly passed on by the trial judge." ' "[10] Before the trial court, the appellants contended that OCGA § 24-9-67.1 violated equal protection and due process, denied them access to the courts, and violated the separation of powers. The appellants also contended that the statute affected their substantive rights and could not constitutionally be applied retroactively to their case, as Mr. Nathans' injuries arose before the effective date of OCGA § 24-9-67.1. At a hearing on, among other things, the constitutional question, the trial court stated that "it was important . . . that this action was filed after the adoption of the new statute" and that "the provisions of . . . § 24-9-67.1 (c) as applied in this case are, in fact constitutional. They are procedural, evidentiary, and remedial in nature and simply refine the prior statute in terms of what parameters of discretion the court will . . . apply . . . in allowing expert testimony." The court subsequently asked defense counsel to prepare an order, stating that defense counsel could address the "constitutional questions how you deem appropriate," but that the retroactivity question that the court had addressed was "the one I find is necessary" to address. In its written order, the trial court stated that OCGA § 24-9-67.1 was "constitutionally applied in this case, which was filed by plaintiffs after the enactment of this new statute." Because the trial court's discussion at the hearing and its written order focus on whether the statute could be applied retroactively without violating the appellants' constitutional rights, and because neither the trial court's discussion nor its written order mention the other constitutional issues, it does not appear that those other issues were distinctly ruled on by the trial court. Accordingly, those issues are not preserved for appeal.[11]

As for whether OCGA § 24-9-67.1 may be retroactively applied to this case, the rule is that laws that affect substantive rights " 'may operate prospectively only.' "[12] " 'Substantive law is that law which creates rights, duties, and obligations. Procedural law is that law which prescribes the methods of enforcement of rights, duties, and

[10] *In the Interest of J. R. R.*, 281 Ga. 662, 662-663 (641 SE2d 526) (2007), quoting *Pitts v. G.M.A.C.*, 231 Ga. 54, 56 (199 SE2d 902) (1973). Accord *Marks v. State*, 280 Ga. 70, 74-75 (623 SE2d 504) (2005).

[11] *In the Interest of J. R. R.*, 281 Ga. at 662-663; *Marks*, 280 Ga. at 74-75.

[12] *DaimlerChrysler Corp. v. Ferrante*, 281 Ga. 273, 273-274 (637 SE2d 659) (2006), quoting *Enger v. Erwin*, 245 Ga. 753, 754 (267 SE2d 25) (1980). See Art. I, Sec. I, Par. X of the Georgia Constitution ("[n]o . . . retroactive law . . . shall be passed.").

obligations.' "[13] In this regard, it has previously been held that OCGA § 9-11-9.1 is a procedural law that may be applied retroactively.[14] The

> requirement of submitting an expert's affidavit [under OCGA § 9-11-9.1] along with the complaint did not affect the sub- stantive right of action for professional malpractice; it alters neither the standard of care to be applied nor the measure of recovery. The statute merely prescribes a procedure for enforcing that right.[15]

This reasoning is applicable to the instant case, as OCGA § 24-9-67.1 (c) does not affect the appellants' substantive right of action, as it does not change the standard of care to be applied or the measure of the appellants' recovery. Other courts that have considered the issue have also concluded that statutes that set forth the qualifications for experts in malpractice actions are procedural in nature and may be applied retroactively.[16]

For these reasons, we conclude that the trial court properly ruled against the appellants' constitutional challenge to the retroactive application of OCGA § 24-9-67.1.

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., and Carley, J., who concur in part and dissent in part.*

CARLEY, Justice, concurring in part and dissenting in part.

I agree with Division 2 of the majority opinion that the trial court properly rejected Appellants' constitutional challenge. In Division 1, however, the majority narrowly and illogically construes OCGA § 24-9-67.1 (c) (2). Citing decisions of the Court of Appeals of Georgia, the majority initially concedes that the statute does not require the plaintiff's medical expert "to have knowledge and experience in the 'same area of practice/specialty as the defendant doctor.' [Cits.]" (Maj. op. p. 806.) However, the majority then assumes that the plaintiff's expert must have practiced in the single specialty in which the defendant physician was practicing when the alleged malpractice occurred. In doing so, the majority disregards the analysis of the very Court of Appeals opinions which it cites.

---

[13] *DaimlerChrysler*, 281 Ga. at 273-274, quoting *Polito v. Holland*, 258 Ga. 54, 55 (365 SE2d 273) (1988).

[14] See *Kneip v. Southern Engineering Co.*, 260 Ga. 409, 410-411 (395 SE2d 809) (1990); *Precision Planning v. Wall*, 193 Ga. App. 331, 332 (387 SE2d 610) (1989).

[15] *Precision Planning*, 193 Ga. App. at 332. In *Kneip*, this Court cited this reasoning with approval. *Kneip*, 260 Ga. at 410-411.

[16] *Gaynor v. Ob/Gyn Specialists*, 51 FSupp.2d 718, 721-724 (W.D. Va. 1999); *McGlothren v. Eastern Shore Family Practice*, 742 S2d 173, 177 (Ala. 1999).

The General Assembly chose not to follow the example of many other state legislatures which have, by plain and express language, deemed to be qualified only those experts in the same specialty as that practiced by the defendant physician. *Cotten v. Phillips*, 280 Ga. App. 280, 284-285 (633 SE2d 655) (2006). OCGA § 24-9-67.1 (c) (2) requires that the expert have "actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given . . . ." As the Court of Appeals has held, this plain language allows for an overlap in specialties, whereby an otherwise qualified medical doctor practicing or teaching in a different specialty from the defendant can still testify so long as the opinion pertains to the expert witness' specialty. *Abramson v. Williams*, 281 Ga. App. 617, 618-619 (636 SE2d 765) (2006); *Cotten v. Phillips*, supra at 283-284.

> "Under the statute, it is the expert's qualifications, rather than the defendant doctor's specialty or area of practice, that controls whether the trial court should allow the expert's testimony." [Cits.] In addition, whether a plaintiff's expert has "actual knowledge and experience in the area of practice or specialty *in which the opinion is to be given*" under subsection (c) (2), is determined "not by the apparent expertise of the treating physician, but rather by the allegations of the complaint concerning plaintiff's injury." [Cits.] (Emphasis in original.)

*MCG Health v. Barton*, 285 Ga. App. 577, 581 (1) (647 SE2d 81) (2007). See also *Mays v. Ellis*, 283 Ga. App. 195, 198 (1) (b) (641 SE2d 201) (2007); *Abramson v. Williams*, supra at 619. Thus, where the defendant doctor has allegedly failed to make a timely evaluation or a correct diagnosis of a condition which is ordinarily within the purview of a different specialty from his own, or failed to refer a patient to a different specialist, the testimony of an expert in the different specialty may be pertinent and OCGA § 24-9-67.1 (c) (2) would not require its exclusion in that event. *MCG Health v. Barton*, supra; *Mays v. Ellis*, supra; *Abramson v. Williams*, supra; *Cotten v. Phillips*, supra.

For purposes of determining the admissibility of an opinion under the statute, the alleged failure of one medical specialist to inform a patient of surgical risks and complications which come within a different specialty is an analogous circumstance. Here, the "complaint does not allege that the [defendant physician] negligently performed the . . . surgery . . . ." *MCG Health v. Barton*, supra. See also *Mays v. Ellis*, supra; *Cotten v. Phillips*, supra at 287. As the majority itself states, Appellants' complaint alleges only that Dr. Diamond "failed to adequately inform Mr. Nathans of the potential risks and

complications of the surgical procedure." (Maj. op. p. 804.) Dr. Goldstein stated in his affidavit that Dr. Diamond deviated from the standard of care by failing to inform Mr. Nathans adequately of the surgery's potential pulmonary risks and complications. The affidavit also addressed the proximate cause of those pulmonary complications which arose after surgery. See *MCG Health v. Barton*, supra; *Mays v. Ellis*, supra at 198-199 (1) (b); *Abramson v. Williams*, supra at 617. Because Dr. Goldstein is a pulmonologist who is qualified to give an opinion on these issues, this testimony would obviously pertain to his specialty, and " 'the area of practice or specialty in which the opinion is to be given' in this case is an area of practice in which [Mr. Nathans'] medical expert possessed the requisite knowledge and experience under OCGA § 24-9-67.1 (c) (2). [Cits.]" *MCG Health v. Barton*, supra at 581-582 (1). See also *Mays v. Ellis*, supra; *Abramson v. Williams*, supra at 619; *Cotten v. Phillips*, supra. Accordingly, the trial court erred in finding that Dr. Goldstein was not qualified pursuant to that statute and in granting summary judgment on this basis. Therefore, I dissent to the affirmance of the trial court's judgment.

I am authorized to state that Presiding Justice Hunstein joins in this opinion.

DECIDED NOVEMBER 21, 2007 —
RECONSIDERATION DENIED DECEMBER 14, 2007.

*Eason, Kennedy & Crawford, David S. Crawford*, for appellants.
*Mayfield, Commander & Pound, Scott C. Commander, Sommers, Scrudder & Bass, Susan V. Sommers, Jane C. Taylor, Clarence O. Taylor IV, Huff, Powell & Bailey, Randolph P. Powell, Jr., Erica S. Jansen*, for appellees.