A07A1531. SPACHT et al. v. TROYER et al.

(655 SE2d 656)

MIKELL, Judge.

Timothy and Andrea Spacht, individually and on behalf of Nicholas Spacht, a minor, sued Children's Healthcare of Atlanta, Dr. Wendy A. Troyer, Dr. William G. Keyes, Dr. James Thomsen, Dr. Verlia Gower, Dr. Theodore Brand, and Dr. John Bleacher for medical malpractice. The Spachts supported their complaint with an affidavit from Dr. David L. Schwartz, a pediatric surgeon, who opined that the defendant doctors had deviated from the acceptable standard of care. Drs. Troyer and Keyes, both neonatologists, filed a motion to dismiss, claiming that the affidavit was insufficient under OCGA § 9-11-9.1 because Dr. Schwartz was not qualified under OCGA § 24-9-67.1 (c). Drs. Thomsen and Gower, both pediatric otolaryngologists, filed a similar motion to dismiss.

The trial court concluded that it had insufficient information to determine whether Dr. Schwartz was competent to testify against the defendant doctors and ordered an OCGA § 24-9-67.1 (d) pretrial hearing. After conducting the hearing and considering "all of the evidentiary materials of record," including a supplemental affidavit from Dr. Schwartz and affidavits and depositions from the defendant doctors, the court granted the motions to dismiss. The Spachts then obtained a certificate of immediate review. We granted appellants' application for interlocutory appeal. For the reasons outlined below, we affirm the trial court's ruling.

1. Initially, the parties dispute the appropriate standard of review. OCGA § 9-11-9.1 (e) requires an affiant to meet the requirements of OCGA § 24-9-67.1. The penalty for failure to supply a proper affidavit per OCGA § 9-11-9.1 is dismissal. Usually dismissals are subject to de novo review.[1] But the interplay of the two Code sections means that, when the trial court has had the hearing contemplated

---

[1] *Atlanta Women's Health Group v. Clemons*, 287 Ga. App. 426 (651 SE2d 762) (2007).

by OCGA § 24-9-67.1 (d) as in this case, our review determines only whether the trial court has abused its discretion.[2]

2. The Spachts claim that the trial court erred by dismissing their complaint on issues not raised or addressed by the parties — whether Dr. Schwartz qualified as a "practicing expert" or "teaching expert" as defined in OCGA § 24-9-67.1 (c) (2). They point out that, in their motions to dismiss, the defendant doctors argued that Dr. Schwartz was not qualified to render an opinion because he lacked experience in neonatology or pediatric otolaryngology.

An expert testifying about the standard of care in a medical malpractice case need not actively practice in the same specialty or practice area as the defendant doctor.[3] Thus, the fact that Dr. Schwartz is a pediatric surgeon and not a neonatologist or pediatric otolaryngologist would not have authorized the court to dismiss the Spachts' complaint. Nonetheless, Dr. Schwartz must meet the requirements of OCGA § 24-9-67.1 to be deemed qualified to testify under OCGA § 9-11-9.1,[4] and the trial court adequately notified the parties that it would be considering those issues at the OCGA § 24-9-67.1 (d) hearing.

3. We turn now to the pivotal question on appeal, whether the trial court erred in its conclusion that Dr. Schwartz was not competent to testify as an expert under OCGA § 24-9-67.1 based on its review of Dr. Schwartz's affidavits. We find that it did not abuse its discretion in so concluding.

In pertinent part, Dr. Schwartz averred in his supplemental affidavit that

> [a]s a board certified pediatric surgeon, I have the training, knowledge and experience to diagnose and surgically manage children with vascular rings, which is the medical condition at issue in this case. My knowledge and experience in diagnosing and surgically managing children with vascular rings was gained from my extensive medical training and experience. . . . Every day I cooperate with all of the specialists involved in a child's medical care to determine whether surgery is the best option for a child. I regularly cooperate with neonatologists and pediatric otolaryngologists to manage surgical problems in children. A child with

---

[2] *MCG Health v. Barton*, 285 Ga. App. 577, 580 (1) (647 SE2d 81) (2007); *Mays v. Ellis*, 283 Ga. App. 195, 199 (1) (b) (641 SE2d 201) (2007).

[3] *Mays*, supra at 196-197 (1) (a); *Canas v. Al-Jabi*, 282 Ga. App. 764, 795 (3) (c) (639 SE2d 494) (2006), rev'd on other grounds, *Kaminer v. Canas*, 282 Ga. 830 (653 SE2d 691) (2007); *Cotten v. Phillips*, 280 Ga. App. 280, 282-285 (633 SE2d 655) (2006).

[4] OCGA § 24-9-67.1 (e).

a vascular ring must be diagnosed immediately by neonatologists and/or pediatric otolaryngologists and then they must refer the child to a pediatric surgeon so that the pediatric surgeon may immediately evaluate the child for surgical division of the vascular ring. Based upon over thirty years of experience in diagnosing and surgically managing children with vascular rings and upon a review of the certified medical records from Children's Healthcare of Atlanta which reflects the treatment that Dr. Troyer, Dr. Keyes, Dr. Gower, and Dr. Thomsen gave to Nicholas Spacht, it is my opinion that Dr. Troyer, Dr. Keyes, Dr. Gower[,] and Dr. Thomsen failed to exercise that degree of skill and care ordinarily required by the medical profession in general under like conditions and similar circumstances.

Dr. Schwartz then lists specific acts or omissions committed by the defendant doctors.

Pursuant to OCGA § 24-9-67.1 (c) (2), the opinion of an expert in a medical malpractice action is admissible only if, at the time of the act or omission alleged to have occurred, the expert

had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in: (A) The active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, *as determined by the judge*, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue; or (B) The teaching of his or her profession for at least three of the last five years as an employed member of the faculty of an educational institution accredited in the teaching of such profession, with sufficient frequency to establish an appropriate level of knowledge, *as determined by the judge*, in teaching others how to perform the procedure, diagnose the condition, or render the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue.[5]

Subsection (f) of the statute provides that

---

[5] (Emphasis supplied.)

[i]t is the intent of the legislature that, in all civil cases, the courts of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states. Therefore, in interpreting and applying this Code section, the courts of this state may draw from the opinions of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 [(113 SC 2786, 125 LE2d 469)] (1993); *General Electric Co. v. Joiner*, 522 U. S. 136 [(118 SC 512, 139 LE2d 508)] (1997); *Kumho Tire Co. Ltd. v. Carmichael*, 526 U. S. 137 [(119 SC 1167, 143 LE2d 238)] (1999); and other cases in federal courts applying the standards announced by the United States Supreme Court in these cases.[6]

Constant in *Daubert* and cases applying the standards set forth therein is the theme that the trial court is the gatekeeper of expert testimony.[7] OCGA § 24-9-67.1 is consistent with this theme because it gives the trial judge the discretion to determine whether the purported expert is competent to testify. In the case at bar, the trial court considered affidavits, had a hearing, and considered late-filed affidavits on the issue before rendering its decision. This careful, fact-based procedure is precisely what the statute, OCGA § 24-9-67.1, contemplates.[8]

(a) Applying the statute, the trial court concluded that Dr. Schwartz was not competent to testify as a practicing expert because, despite his averment that he regularly cooperated with neonatologists and pediatric otolaryngologists in managing pediatric surgical problems and had over 30 years of experience in diagnosing and surgically managing children with vascular rings, the record was silent as to *"when* within the last thirty years Dr. Schwartz ha[d] 'diagnosed the condition' which the doctor defendants in this case are alleged to have wrongfully failed to diagnose — specifically, the 'vascular ring.' " Accordingly, the trial court was "unable to determine from the record before it whether Dr. Schwartz had made even *one*

---

[6] OCGA § 24-9-67.1 (f).

[7] See generally *Nathans v. Diamond*, 282 Ga. 804, 806 (1), n. 8 (654 SE2d 121) (2007) ("OCGA § 24-9-67.1 (c) (2) (A) grants trial courts the authority to determine whether an expert is properly qualified"); *McDowell v. Brown*, 392 F3d 1283, 1298 (IV) (11th Cir. 2004) ("In *Daubert*[, supra], the United States Supreme Court impressed a gatekeeping role upon judges, and directed them to ensure that any and all scientific testimony or evidence is not only relevant, but reliable") (punctuation omitted); *Daubert*, supra at 589; *Pipitone v. Biomatrix*, 288 F3d 239, 250 (II) (C) (5th Cir. 2002); *Dodge v. Cotter Corp.*, 203 F3d 1190, 1200 (IV), n. 12 (10th Cir. 2000).

[8] See *Cotten*, supra at 286.

diagnosis of a 'vascular ring' within five years of March 12, 2002," the date at issue in this case.

As stated earlier, subsection (c) (2) (A) of the statute requires practice "of such area of specialty . . . for at least three of the last five years, with sufficient frequency to establish *an appropriate level of knowledge, as determined by the judge.*"[9] In a recent decision, the Supreme Court of Georgia made clear that this language does not require an expert to have knowledge and experience in the same area of practice or specialty as the defendant doctors.[10] Instead, the expert must have "knowledge and experience in the practice or specialty that is relevant to the acts or omissions that the plaintiff alleges constitute malpractice."[11]

To determine "the area of practice or specialty in which the opinion is to be given," we look to the allegations of plaintiff's complaint and not to the treating physician's apparent expertise.[12] Here, the complaint alleges that the defendant doctors failed to read and act upon CAT scan results, which revealed that Nicholas Spacht, who was two and one-half months old at the time, had a vascular ring. The complaint further alleges that the doctors should have referred Nicholas for surgery to divide the vascular ring, but instead performed an unnecessary tracheotomy, salivary gland excision, and other procedures that could have been avoided if the defendant doctors had recognized and treated the vascular ring. It does not allege that the defendant doctors performed the allegedly unnecessary procedures negligently. Thus, the "area of practice or specialty in which the opinion is to be given" involves the diagnosis of a vascular ring.[13]

In this case, the trial court specifically found that the "three of the last five years" portion of the requirements set forth in the statute was fulfilled by the statement in Dr. Schwartz's affidavit that he had "over thirty years of experience in diagnosing and surgically managing children with vascular rings." The trial court's ruling that Dr. Schwartz was not competent to testify as a practicing expert, however, was based upon its finding that he did not state in his affidavits the frequency with which he diagnosed the condition. Although the three-year and five-year time lines, established by the legislature, are precise limitations on the trial court's discretion, we cannot say

---

[9] (Emphasis supplied.) OCGA § 24-9-67.1. See *Cotten*, supra at 284, n. 8.

[10] *Nathans*, supra (approving *Barton*, supra; *Mays*, supra; and *Cotten*, supra).

[11] Id.

[12] *Barton*, supra at 581 (1); *Mays*, supra at 198 (1) (b); *Abramson v. Williams*, 281 Ga. App. 617, 619 (636 SE2d 765) (2006).

[13] See *Mays*, supra.

that the trial courts abused its discretion when it found that the "three of the last five years" requirement was satisfied by Dr. Schwartz's affidavit.[14]

Additionally, we cannot hold as a matter of law that a trial court abuses its discretion when, after an OCGA § 24-9-67.1 (d) hearing, it decides that a physician who specializes in one area of medicine lacks the "appropriate level of knowledge" to testify against a physician in a different specialty, albeit a closely related one, based upon a factual finding that the affidavit does not expressly state the frequency with which the affiant has diagnosed the condition that is alleged to have been misdiagnosed.[15] Although the affiant here asserts that he frequently "cooperates with" physicians in the sued specialties, is very familiar with vascular rings, and frequently has operated to correct vascular rings over his 30 years of experience, he does not state when during his 30 years of practice he diagnosed the condition. Based on the record here, we cannot conclude that the trial court's findings that it was unable to determine from the record that Dr. Schwartz had made even one diagnosis of a "vascular ring" within five years of March 12, 2002, and consequently, that Dr. Schwartz was not competent to offer an opinion as a practicing expert, constituted an abuse of its discretion. The statute specifically assigns to the trial court the duty to determine whether the expert actively practiced the area of specialty with sufficient frequency to establish an appropriate level of knowledge to render him competent to testify. The trial court did not abuse its discretion in finding here that Dr. Schwartz was not competent to testify as a "practicing expert."

(b) The trial court also found that Dr. Schwartz was not competent to testify as a "teaching expert." As the trial court's order stated, although the affidavit indicated that he was a member of the faculty at two schools, there was no evidence that he

> is or was an "employed" member of either faculty, that he was actually *teaching* at either institution as an employed faculty member, that he had so taught "for at least three of the last five years" relative to the date the alleged failure to diagnose took place, or most importantly, that [while there he] has taught others to "diagnose the condition . . . which is alleged to have been performed or rendered negligently by

---

[14] *Canas*, supra at 796 (3) (c).

[15] OCGA § 24-9-67.1 (c) (2) (A) allows an "appropriate level of knowledge" to be demonstrated in performing a procedure, diagnosis, *or* treatment. Here, however, as the trial court recognized in its order, the plaintiffs limited the analysis in this case to diagnosis alone, both by the allegations in the complaint and by the expert's own affidavit testimony.

the defendant whose conduct is at issue," *and* "with sufficient frequency to establish an appropriate level of knowledge" to the Court.

(Emphasis in original.) OCGA § 24-9-67.1 (c) (2) (B) provides that an expert may establish his professional knowledge and expertise based on

[t]he teaching of his or her profession for at least three of the last five years as an employed member of the faculty of an educational institution accredited in the teaching of such profession, with sufficient frequency *to establish an appropriate* level of knowledge, *as determined by the judge*, in teaching others how to perform the procedure, diagnose the condition, or render the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue.[16]

The trial court correctly interpreted the statute, concluding that in order to be deemed competent through this subsection of the statute, the witness, to be qualified, must have been an *employed* member of the faculty of an educational institution and must have taught others, for at least three of the last five years, to diagnose the condition that is alleged to have been performed or rendered negligently by the defendant doctors. In this case, neither the affidavit nor the supplemental affidavit so states. Instead, the supplemental affidavit states that Dr. Schwartz was an "assistant clinical professor" in surgery at one institution since 1974 and a "clinical assistant professor" at another since 1978. There is no mention whatsoever as to whether Dr. Schwartz was *employed* by an educational institution in 2002 and in the five years prior to that and no mention of his having taught the subject necessary to be deemed an expert within five years of March 12, 2002. Therefore, we cannot find that the trial court abused its discretion when it concluded that Dr. Schwartz could not qualify as a "teaching expert" in this case. Accordingly, we affirm the trial court's grant of the defendant doctors' motions to dismiss.

*Judgment affirmed. Andrews, P. J., Blackburn, P. J., Smith, P. J., and Ruffin, J., concur. Johnson, P. J., and Phipps, J., concur in part and dissent in part.*

---

[16] (Emphasis supplied.) OCGA § 24-9-67.1 (c) (2) (B).

PHIPPS, Judge, concurring in part and dissenting in part.

I concur in Divisions 1 and 2. Because Dr. Schwartz was qualified under OCGA § 24-9-67.1 (c) (2) (A) to render an expert opinion about the diagnosis and treatment of a vascular ring, the trial court abused its discretion by granting the defendant doctors' motions to dismiss. I therefore dissent to Division 3 (a). I concur specially in Division 3 (b).

We have repeatedly stated and the Supreme Court of Georgia has made clear that the language of OCGA § 24-9-67.1 (c) (2) (A) does not require an expert to have knowledge and experience in or to actively practice in the same area of practice or specialty as the defendant doctors.[17] Yet the majority plainly applies a more stringent standard here because Dr. Schwartz is not a neonatologist or pediatric otolaryngologist. The appropriate inquiry is whether the expert has "knowledge and experience in the practice or specialty that is relevant to the acts or omissions that the plaintiff alleges constitute malpractice."[18]

Based on the complaint's allegations, the "area of practice or specialty in which the opinion is to be given" involves the diagnosis and treatment of a vascular ring.[19] Dr. Schwartz testified that he is a board certified pediatric surgeon and has the "training, knowledge, and experience to diagnose and surgically manage children with vascular rings." He further testified that he daily cooperates with all specialists involved in a child's care to determine whether surgery is the best option and regularly cooperates with neonatologists and pediatric otolaryngologists to manage surgical problems in children. Dr. Schwartz averred that he has "over thirty years experience in diagnosing and managing children with vascular rings."

We have allowed doctors with less experience to render expert opinions in medical malpractice cases. For example, earlier this term, we decided *MCG Health v. Barton*,[20] in which an emergency room physician testified that a urologist breached the standard of care by failing to timely evaluate and treat an injury, resulting in the loss of a testicle.[21] The plaintiff's expert testified that he was "a licensed physician with over 20 years of emergency room experience, including experience diagnosing testicular injuries," and that was deemed sufficient to qualify him to testify regarding the failure to timely

---

[17] *Nathans v. Diamond*, 282 Ga. 804 (654 SE2d 121) (2007); *Mays v. Ellis*, 283 Ga. App. 195, 196-197 (1) (a) (641 SE2d 201) (2007); *Canas v. Al-Jabi*, 282 Ga. App. 764, 795 (3) (c) (639 SE2d 494) (2006), rev'd on other grounds, *Kaminer v. Canas*, 282 Ga. 830 (653 SE2d 691) (2007); *Cotten v. Phillips*, 280 Ga. App. 280, 284-285 (633 SE2d 655) (2006).

[18] *Nathans*, supra.

[19] See *Mays*, supra at 198 (1) (b).

[20] 285 Ga. App. 577 (647 SE2d 81) (2007).

[21] Id. at 580.

evaluate the plaintiff's injuries.[22] Despite the fact that Dr. Schwartz has been practicing pediatric surgery since 1974 and has over 30 years experience in diagnosing vascular rings, the majority does not find his experience sufficient to allow him to testify regarding the failure to diagnose Nicholas Spacht's vascular ring.

The trial court determined that Dr. Schwartz did not qualify as a "practicing expert" witness under OCGA § 24-9-67.1 (c) (2) (A) because his affidavits failed to show that he had diagnosed a vascular ring on a specific date within five years of the alleged failure to diagnose. Dr. Schwartz testified, however, that he is involved every day in determining whether a child needs surgery. A vascular ring is an uncommon genetic disorder that requires surgery, and Dr. Schwartz testified that he has the knowledge and experience to diagnose this condition. He specifically testified that he has been diagnosing and managing vascular rings for at least the last 30 years, which is sufficient to satisfy the statute. The majority interprets the statute far too narrowly by concluding otherwise.

Because the record shows that "the area of practice or specialty in which the opinion is to be given" is an area of practice in which Dr. Schwartz "possessed the requisite knowledge and experience under OCGA § 24-9-67.1 (c) (2),"[23] he is authorized to render an expert opinion in the case about the diagnosis and treatment of a vascular ring.[24]

I am authorized to state that Presiding Judge Johnson joins in this opinion.

DECIDED NOVEMBER 30, 2007 —
RECONSIDERATION DENIED DECEMBER 14, 2007 — 

*Greer, Klosik, Daugherty, Swank & McCune, Robert J. McCune, Alina A. Krivitsky, John F. Daugherty*, for appellants.

*Owen, Gleaton, Egan, Jones & Sweeney, H. Andrew Owen, Jr., Greenberg Traurig, Darcy F. Coty, Lori G. Cohen, Michael J. King, Weinberg, Wheeler, Hudgins, Gunn & Dial, Robert G. Tanner, Thomas E. Lavender III*, for appellees.

---

[22] Id. at 581 (1).

[23] *Barton*, supra at 581-582; see also *Mays*, supra at 199.

[24] See *Abramson v. Williams*, 281 Ga. App. 617, 619 (636 SE2d 765) (2006).