## A09A0966, A09A0967. EMORY-ADVENTIST, INC. v. HUNTER;
### and vice versa.
(687 SE2d 267)

MILLER, Chief Judge.

Laura Hunter's late husband, Charles Hunter, died while a patient at Emory-Adventist, Inc. d/b/a Emory-Adventist Hospital (the "Hospital"). On June 13, 2008, Hunter filed this medical malpractice action against the Hospital and Dr. Michaele Brown (the "Emory defendants"), alleging that Dr. Brown was negligent in providing medical care to her husband. Hunter supplemented her complaint with an affidavit from Dr. Kelly Thrasher, who opined that Dr. Brown had deviated from the acceptable standard of care in treating Hunter's husband. Thereafter, the Emory defendants filed a motion to dismiss, claiming that Dr. Thrasher failed to meet the competency requirements of OCGA § 24-9-67.1 (c) ("Qualifications Statute"). The trial court denied the motion, and following our grant of their application for interlocutory appeal, the Emory defendants appeal in Case No. A09A0966, arguing that the trial court erred in finding that a physician does not need a license to actively practice medicine under OCGA § 24-9-67.1 (c) (2) (A). Hunter cross-appeals in Case No. A09A0967, arguing that the trial court erred in failing to rule on her constitutional challenge to the Qualifications Statute. Given that the plain language of the Qualifications Statute only requires that an expert be licensed during three of the last five years preceding the alleged negligent act or omission, we affirm in Case No. A09A0966. In light of the foregoing, we need not reach the issue Hunter raises in Case No. A09A0967.

We review the trial court's interpretation of OCGA § 24-9-67.1 de novo, since the interpretation of a statute is a question of law. See *American Gen. &c. Ins. Co. v. Vance*, 297 Ga. App. 677 (678 SE2d 135) (2009).

The undisputed facts show that on December 31, 2005, Charles Hunter was admitted to the Hospital with a previous cardiac history and symptoms of chest pain, shortness of breath, and urinary difficulties. Two days after his admission, he suffered a massive heart attack and died. Hunter alleged in her complaint that the Emory defendants failed to check her husband's cardiac enzymes and heart conditions at regular intervals following his initial admission, in deviation from the standard of care, and that their negligence proximately caused his death. Due to time constraints, Hunter was unable to file an OCGA § 9-11-9.1 affidavit contemporaneously with the filing of her complaint, and thereafter supplemented her complaint with an affidavit from Dr. Thrasher. OCGA § 9-11-9.1 (b). The Emory defendants moved to dismiss the case, asserting, inter alia, that Dr. Thrasher had not actively practiced medicine for three

of the five years preceding such negligence as required by the Qualifications Statute, and was therefore incompetent to submit an OCGA § 9-11-9.1 affidavit. Hunter later submitted a second affidavit from Dr. Thrasher, entitled "Supplemental Affidavit."

The record reflects that Dr. Thrasher graduated from medical school in 2001 and received his M.D. degree. In July 2001, he began a one-year internship, followed by a two-year residency in internal medicine from 2002 until 2004. He was licensed to practice medicine in February 2003. From 2004 until February 11, 2008, Dr. Thrasher was employed as a physician with Sanus Medical, practicing internal medicine. After a hearing, the trial court denied the Emory defendants' motion to dismiss, finding it was "unable to say that the time a doctor spends in his or her residency program does not constitute 'actively practicing' medicine pursuant to OCGA § 24-9-67.1."

*Case No. A09A0966*

1. The Emory defendants contend that the trial court erred in finding that Dr. Thrasher was competent to testify because Georgia law requires that a physician must be licensed to engage in the "active practice" of medicine, and Dr. Thrasher was not licensed to practice medicine while an intern and a resident. See OCGA § 43-34-27 (a) (1) (A) (2008)[1] ("Any person who wishes to obtain the right to practice medicine in this state . . . shall . . . make application to the board . . . and shall obtain from the board a license to practice medicine."). As such, the Emory defendants argue that Dr. Thrasher was not regularly engaged in the "active practice" of medicine for three of the last five years preceding the alleged negligence as required by the Qualifications Statute. Given that the plain terms of the Qualifications Statute only require that an expert be licensed at the time of the alleged malpractice, and Dr. Thrasher was authorized to practice in the area of specialty at issue and did so actively for the requisite period of time, we disagree.

Pursuant to OCGA § 9-11-9.1, a complaint alleging professional malpractice must be supported by an affidavit of an expert "competent to testify" or it is subject to dismissal for failure to state a claim. See OCGA § 9-11-9.1 (a), (e). In order for an expert to be competent to testify under OCGA § 9-11-9.1, he or she must meet the requirements set forth in the Qualifications Statute. OCGA § 24-9-67.1 (e); *Spacht v. Troyer*, 288 Ga. App. 898 (1) (655 SE2d 656) (2007).

---

[1] On July 1, 2009, OCGA § 43-34-27 was amended and redesignated as OCGA § 43-34-26. Given that the trial court entered its order in August 2008, we apply the 2008 version of this statute and other statutes under Title 43 to this case.

OCGA § 24-9-67.1 (c) provides in relevant part:

[I]n professional malpractice actions, the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the professional whose conduct is at issue, shall be admissible *only if, at the time the act or omission is alleged to have occurred*, such expert:

(1) *Was licensed* by an appropriate regulatory agency to practice his or her profession in the state in which such expert was practicing or teaching in the profession *at such time*; and

(2) In the case of a medical malpractice action, had actual *professional knowledge and experience in the area of practice or specialty* in which the opinion is to be given as the result of having been *regularly engaged* in:

(A) The *active practice of such area of specialty of his or her profession for at least three of the last five years*, with sufficient frequency to establish an appropriate level of knowledge, *as determined by the judge*, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue. . . .

(Emphasis supplied.)

It is clear that the Qualifications Statute has two distinct components, the first of which is not contested. First, an expert must be licensed to practice medicine at the time of the alleged malpractice. OCGA § 24-9-67.1 (c) (1). Second, an expert must have had "actual professional knowledge and experience in the area of [the alleged malpractice] as the result of having been regularly engaged in . . . [t]he active practice of such area of specialty of his or her profession for at least three of the last five years" before the alleged malpractice. OCGA § 24-9-67.1 (c) (2) (A). Further, the trial judge determines whether a medical expert has demonstrated actual knowledge and experience "with sufficient frequency to establish an appropriate level of knowledge" in the proffered area. OCGA § 24-9-67.1 (c) (2) (A). Had the General Assembly intended to impose a license requirement during three of the last five years, it could have plainly done so by including the words "active practice of a licensed physician" in the statute and/or defining such term. See *Mays v. Ellis*, 283 Ga. App. 195, 197 (1) (a) (641 SE2d 201) (2007) (in construing OCGA § 24-9-67.1 (c) (1) (A), we held that "[if] the General Assembly intended that only experts in the same area of practice/specialty as the defendant doctor be deemed qualified to provide expert testimony against those doctors, it could have plainly

done so'') (punctuation omitted).

The doctrines of noscitur a sociis (*Tuten v. City of Brunswick*, 262 Ga. 399, 401 (2) (b), n. 1 (418 SE2d 367) (1992) (meaning of a word is known by the words with which it is associated)) and expressio unius est exclusio alterius (*Morton v. Bell*, 264 Ga. 832, 833 (452 SE2d 103) (1995) (inclusion of one thing implies the exclusion of another)) make clear that the words "active practice" in subsection (c) (2) (A) relate to practice in an area of medical specialty showing expertise therein, not licensure to practice medicine generally. See also *Berryhill v. Ga. Community Support &c.*, 281 Ga. 439, 442 (638 SE2d 278) (2006) (where the legislature "uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended") (citations and punctuation omitted). Consequently, we analyze the words for their plain meaning in this case. OCGA § 1-3-1 (b) ("the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter"); see also American Heritage Dictionary of the English Language 2009 (the definition of "practice" includes "[r]epeated performance of an activity in order to learn or perfect a skill"). As such, and apart from the requirement of licensure, the Qualifications Statute predicates competence to testify as an expert upon knowledge and experience in an area of specialty as demonstrated by the active practice thereof. See *Cogland v. Hosp. Auth. of the City of Bainbridge*, 290 Ga. App. 73, 77 (2) (b) (658 SE2d 769) (2008) (although physician had been licensed to practice medicine since 1974, his affidavit contained no information concerning his recent or continuing experience as an orthopedist and was therefore insufficient under OCGA §§ 24-9-67.1 and 9-11-9.1).

Here, Dr. Thrasher had engaged in actual clinical patient care in the proffered area for the requisite period of time. For at least three of the last five years preceding December 31, 2005, Dr. Thrasher was involved in the "making of decisions . . . in cases of patients such as Charles Hunter who were hospitalized with multiple medical issues which needed to be monitored on a regular basis." For example, "several times a week, and often on a daily basis," Dr. Thrasher "determin[ed] when to order laboratory tests of patients whose complaints included shortness of breath," treated complaints of "shortness of breath," obtained "lab tests of cardiac enzymes" and "cardiology consultations," and "check[ed] cardiac enzymes at appropriate levels with regard to the patient and his circumstances." The foregoing demonstrates that Dr. Thrasher had regularly engaged in the repeated performance of acts relevant to the acts or omissions that Hunter alleges constitute malpractice and caused Mr. Hunter's injuries (see *Mays*, supra, 283 Ga. App. at 198 (1) (b) ("the statutory 'area of practice or specialty in which the opinion is to be

given' is dictated . . . by the allegations of the complaint concerning the plaintiff's injury") (citation and punctuation omitted)) and that he engaged in such acts with sufficient frequency from July 2001 until December 31, 2005 to establish an "appropriate level of knowledge" to offer his opinion as one engaged in the active practice of internal medicine. OCGA § 24-9-67.1 (c) (2) (A). See *Akers v. Elsey*, 294 Ga. App. 359, 362 (2) (670 SE2d 142) (2008) ("active practice" determination lies within the sound discretion of the trial judge). Compare *Collins v. Dickman*, 295 Ga. App. 601, 607 (3) (672 SE2d 433) (2008) (evidence that medical expert had not engaged in actual clinical patient care for "many years" and only taught part-time 12 hours a week supported trial judge's discretionary determination that expert was not sufficiently qualified as medical expert).

Moreover, it is undisputed that as a resident, Dr. Thrasher was authorized to perform acts under the supervision of practicing physicians as part of his postgraduate training program.[2] OCGA § 43-34-47 (b) (3) (2008) ("The holder of a valid temporary postgraduate training permit shall be entitled to perform such acts as may be prescribed by or incidental to the holder's postgraduate residency training program. . . ."); Ga. Comp. R. & Regs. r. 360-2-.09 (2).

Based on the foregoing, we conclude that Dr. Thrasher was competent to give his affidavit under OCGA § 9-11-9.1 because the plain terms of the Qualifications Statute only impose a license requirement at the time of the alleged malpractice and Dr. Thrasher was authorized to practice in the area of specialty at issue for three of the last five years preceding the alleged malpractice. OCGA §§ 43-34-47 (b) (3); 24-9-67.1 (c) (2) (A). Thus, the trial court did not err in denying the Emory defendants' motion to dismiss.

### Case No. A09A0967

2. Hunter argues that the trial court erred in failing to rule on the constitutionality of the Qualifications Statute and requests that the case be remanded if the main appeal is not affirmed. Given our disposition in Division 1, Hunter's appeal is dismissed as moot.

*Judgment affirmed in Case No. A09A0966. Appeal dismissed as moot in Case No. A09A0967. Andrews, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 20, 2009.

---

[2] In fact, the record reflects that Dr. Brown was a resident acting under the supervision of attending physician, Paul Monte, M.D., when she rendered medical care to Mr. Hunter.

*Balch & Bingham, Michael J. Bowers, Malissa Kaufold-Wiggins, James D. Meadows, Michelle Rothenberg-Williams*, for appellant.
*Joseph H. King, Jr.*, for appellee.