A02A1064. BAIN v. THE STATE.
(574 SE2d 590)

BARNES, Judge.

After methamphetamine was found during a search of his car, Mark C. Bain was indicted for conspiracy to commit a crime, trafficking in methamphetamine, two counts of possession of a firearm during the commission of a crime, and possession of a destructive device. Later, he moved to suppress evidence of the drugs, contending they were seized during an illegal search. During the hearing on this motion, the State nolle prossed all charges except the trafficking charge, which was reduced to possession of over 200 grams of methamphetamine. Bain also waived his right to a jury trial and during a bench trial stipulated to sufficient facts for the trial court to find him guilty of possession of methamphetamine.

1. In several enumerations of error, Bain contends that the trial court erroneously denied his motion to suppress. We do not agree.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to the questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations omitted.) *Edgerton v. State*, 237 Ga. App. 786, 787 (516 SE2d 830) (1999).

Viewed in the light most favorable to the trial court's judgment and findings, the evidence shows that on April 20, 2001, a fellow officer gave Detective Thompson, a detective with the Forsyth County Sheriff Department, Kenny Jackson's telephone number and told him that Jackson had information regarding local drug activity. When Detective Thompson called Jackson, Jackson told him that Bain was pressuring him to sell drugs, and he agreed to meet with Thompson. On April 23, Thompson and his partner, Detective Murdock, met Jackson and Jackson's girlfriend at a church cemetery. During the meeting, Jackson told the officers that he and Bain had become friends while incarcerated and that he had done some computer work for Bain. Jackson told the detectives that Bain wanted him to sell drugs to pay off a $700 debt. He relayed to the officers details about Bain's home, including the extensive gun collection and the video surveillance system in Bain's home and told them that Bain had confided that he sold methamphetamine. Jackson told the officers the make, model, and tag number of Bain's vehicle and told them that Bain carried contraband in a container in the front seat area. Detective Thompson testified that Jackson told him Bain always carried around at least a pound of methamphetamine. Jackson agreed to participate in a controlled buy.

At the motion to suppress hearing, Detective Thompson testified that, after the meeting, he and Detective Murdock corroborated Jackson's information and then met with Jackson the next morning to have him attempt contact with Bain. That morning, April 24, in the

presence of the detectives, Jackson made several unsuccessful attempts to reach Bain at his residential and cellular numbers. Jackson finally talked with Bain, who agreed to meet at Jackson's residence. Jackson talked with Bain for a second time approximately 90 minutes later, at which time Bain advised him he was on his way. All of the calls were recorded.

Bain was stopped by a uniformed officer as he approached Jackson's home. Although the officer had been alerted to stop Bain, the officer also noted that Bain had a pipe projecting from the back of his truck in violation of OCGA § 40-8-27. When Bain exited his truck, the officer told him that he was stopped because of the pipe and asked Bain if he could search his truck. Bain initially agreed, but when he saw Detective Thompson approach his truck, he rescinded the consent, became irate, and moved toward Detective Thompson. Detective Thompson testified that, because he felt it was necessary for officer safety, Bain was then handcuffed. Detective Murdock looked through the passenger window of the truck and noticed a container "on the floorboard in front of the console" that matched Jackson's description of the one Bain used to carry methamphetamine. The officers searched the truck and recovered approximately one pound of methamphetamine, two loaded handguns, a light anti-tank weapon, scales, currency, and other drug-related items.

(a) Bain first argues that the motion to suppress should have been granted because the traffic stop for failing to flag the projecting pipe was pretextual. The trial court found, as a matter of fact, that the stop was not pretextual, noting that "there was articulable suspicion for the traffic stop. There was a traffic violation being committed. A PFC [sic] pipe sticking out without the proper — appropriate flags or lights."

> In *Whren v. United States*, [517 U. S. 806 (116 SC 1769, 135 LE2d 89) (1996),] the United States Supreme Court held that when an officer sees a traffic offense occur, a resulting traffic stop does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop, and even if a reasonable officer would not have made the stop under the same circumstances.

*Smith v. State*, 240 Ga. App. 150, 151 (1) (522 SE2d 744) (1999). OCGA § 40-8-27 requires a visible red light or bright red or orange flag on a load extending four feet or more from the rear of any vehicle, and since the evidence supports the conclusion that Bain violated the statute, the trial court did not err in finding that the stop was permissible and in denying the motion to suppress. *Allenbrand v. State*, 217 Ga. App. 609 (1) (458 SE2d 382) (1995).

(b) Bain also contends that the trial court erred by denying his motion to suppress because the officers lacked probable cause to search his truck after the stop, specifically arguing that the totality of the circumstances, including the informant's veracity and reliability, was insufficient to establish probable cause.

Because of the ready mobility of an automobile and the fact that the expectation of privacy with respect to one's automobile is significantly less than that with respect to one's home or office, the United States Supreme Court has long recognized an exception to the warrant requirement for searching an automobile, if based upon probable cause. *California v. Carney*, 471 U. S. 386, 390-393 (105 SC 2066, 85 LE2d 406) (1985). When, as here, the basis for the search of Bain's car was an informant's tip and the officers' corroboration of certain details of that tip,

> [t]he sufficiency of information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability[, such as corroboration by the personal observation of a police officer].

(Citations and punctuation omitted.) *Rucker v. State*, 199 Ga. App. 854, 855 (406 SE2d 277) (1991). Further, these elements need not be exact in every case, but instead, should be used to illuminate the common sense question of whether there is probable cause to believe that contraband will be found in a particular place. *Leonard v. State*, 213 Ga. App. 503, 504 (445 SE2d 330) (1994).

Here, Jackson provided information about the unique setup of a video monitor in Bain's home, the large quantity of guns in the home, and the make, model, and tag number of Bain's truck. He also had access to Bain's numerous telephone numbers, and when Jackson called Bain, Bain returned his call and agreed to meet him. Jackson provided information about where the contraband would be in the truck and how it would be packaged. He also told the officers about others who were involved in selling contraband for Bain, that Bain had been arrested for domestic violence, and that his girlfriend was on probation.

For the corroboration to be sufficient to show reliability,

> the information corroborated must include a range of details relating not just to easily obtained facts and conditions

existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted. In short, the information corroborated will generally need to be a prediction of future behavior, . . . that is, inside information not available to the general public.

(Citations and punctuation omitted.) *Langford v. State*, 213 Ga. App. 232, 234 (1) (444 SE2d 153) (1994). Here, Detective Thompson corroborated that Bain was arrested for domestic violence and the make, model, and tag number of Bain's truck, obtained arrest records of the persons that Jackson claimed were selling methamphetamine for Bain, verified that Bain's girlfriend was on probation, and verified the existence of the surveillance equipment and weapons in Bain's home.

While Jackson had never acted as an informant before, and he and his girlfriend were facing criminal charges for nondrug offenses, this is not fatal, given the totality of the circumstances. See *State v. Gilman*, 218 Ga. App. 895 (463 SE2d 720) (1995). Further, if Jackson's reliability were an issue, he demonstrated his reliability by meeting with the investigator and putting himself on the line by participating in the controlled purchase. *Pettus v. State*, 237 Ga. App. 143, 145 (2) (514 SE2d 901) (1999). Accordingly, it was not error to deny the motion to suppress on this ground as well.

2. Bain argues that some of the items seized during the subsequent search of his truck should have been suppressed, specifically maintaining that police illegally seized private papers from his truck that were unrelated to the alleged sale of contraband. After Detective Murdock discovered the contraband in a search supported by probable cause, the police were authorized to place Bain under arrest.

When a lawful arrest is effected[,] a peace officer may reasonably search the person arrested and the area within the person's immediate presence for the purpose of: (1) Protecting the officer from attack; (2) Preventing the person from escaping; (3) Discovering or seizing the fruits of the crime for which the person has been arrested; or (4) Discovering or seizing any instruments, articles, or things which are being used or which may have been used in the commission of the crime for which the person has been arrested.

OCGA § 17-5-1 (a). Papers are not exempt from otherwise proper searches. *Mooney v. State*, 243 Ga. 373, 385 (1) (254 SE2d 337) (1979). Detective Thompson testified that he seized the documents from Bain's truck because he was trained to recognize financial papers related to drug transactions and believed the papers in Bain's

truck to be of that nature. The only papers admitted as State's evidence were documents that Detective Thompson testified were "drug notes." Thompson testified that many of the notes were found in the canvas bag containing the contraband and "there was reference in the notes having three ounces available for Fourteen Hundred Dollars. There was — there were circles with eight in the middle of it, which in my experience indicates eight balls. There was sixteenths referenced to and quarters and stuff like that." There were also documents that appeared to relate to the price of methamphetamine and monies owed to Bain, including a note regarding Jackson's $700 debt.

The documents that Bain complains about were admitted as defendant's Exhibit 5 during the cross-examination of Detective Thompson. The State objected, questioning the relevance. Bain responded that the evidence was relevant to the issue of the constitutionality of the Forfeiture Statute, because the items were seized under its jurisdiction. The trial court sustained the objection, but allowed Bain to tender the exhibit.

Pretermitting Bain's assertion that some of the documents that were seized were private and unrelated to the crime, the evidence complained of was not part of the State's evidence against Bain and, as such, did not contribute to his guilty verdict. Accordingly, because the evidence was excluded, in substance, if not form, there is no error.

To the extent that Bain attempts to attack the Forfeiture Statute's constitutionality in this enumeration, that argument is directed to issues beyond the scope of the enumeration of error, which may not be expanded by the argument contained in the brief. *Mackey v. State*, 235 Ga. App. 209, 210 (1) (509 SE2d 68) (1998).

3. In two enumerations of error, Bain argues that OCGA § 16-13-49 (d) (2) and (3) and (g) (1) and (2) are facially unconstitutional and unconstitutional as applied. Bain argues in his brief that these statutes violate the Fourth Amendment and due process, because the definition of "property subject to forfeiture" contained in the statute is so broad as to negate any requirement of probable cause for its seizure. He further maintains that to prevent abuse, a magistrate needs to determine that probable cause exists before any seizures are made under these statutes.

However, because grounds not presented to, nor specifically ruled upon by, the trial court are waived and not generally considered by this Court, this question is not properly before us for review. *O'Hannon v. State*, 240 Ga. App. 706, 709 (2) (515 SE2d 607) (1999). Cf. *Marr v. Ga. Dept. of Ed.*, 264 Ga. 841 (452 SE2d 112) (1995) (party must obtain specific ruling on constitutional question before Supreme Court has jurisdiction to hear issue). While Bain raised the constitutional issue in the motion to suppress and mentioned it again

during a short colloquy during the hearing, the trial court did not specifically rule upon the issue. In fact, Bain offered no objection to the trial court's lengthy oral order denying the motion to suppress.

"It is not enough that a constitutional question was duly made in the court below, but the trial court must have made a ruling thereon." *Yarbrough v. Ga. R. & Banking Co.*, 176 Ga. 780, 783 (168 SE 873) (1933).

*Judgment affirmed. Ruffin, P. J., and Pope, Senior Appellate Judge, concur.*

DECIDED NOVEMBER 19, 2002.

*Herbert Shafer*, for appellant.

*Philip C. Smith, District Attorney, Rand J. Csehy, Assistant District Attorney*, for appellee.