## A03A0623. HERNDON et al. v. HEARD.
### (585 SE2d 637)

ADAMS, Judge.

Jack Heard sued his nephew, L. G. Herndon, Jr., and Herndon's Sales & Storage of Vidalia Onions, Inc. ("Herndon") for damages he claimed from their various business dealings. Herndon answered and counterclaimed. The case was tried to a jury, which returned a verdict in Heard's favor for $168,719.99, and in favor of Herndon for $110,450. Herndon appeals, arguing in five enumerations of error that the trial court erred in denying his motion for directed verdict. For the following reasons, we affirm in part and reverse in part.

The record shows that on December 20, 1995, Heard filed his complaint against Herndon and Herndon's Sales, alleging that

defendants had breached their agreement to let him use 424 onion bins for storage during the 1995 onion season. The complaint also alleged that defendants owed him $40,394.46 for an unspecified reason and that they owed him $6,500 for an unpaid debt for the purchase of a labeling machine. Heard claimed that defendants' conduct had been wilful and fraudulent, and he also claimed punitive damages. Herndon and Herndon's Sales answered and counterclaimed, alleging that Heard owed them money for various expenditures relating to the production of the 1994 and 1995 onion crop.

After receiving permission from the court, Herndon's Sales amended its counterclaim on September 13, 1996, claiming that Heard had intentionally failed to cancel a security deed. The trial court granted Herndon's motion for summary judgment on this claim. On September 27, 2001, Herndon filed another amendment to the counterclaim, alleging that Heard had slandered him by making derogatory and defamatory statements about him. On October 4, 2001, Heard filed an eighteen-page "Amended and Restated Complaint," which contained nine counts.

On February 25, 2002, the superior court began the seven-day trial of this matter. The court heard pretrial motions, first addressing Herndon's argument that the amended and restated complaint was barred by the statute of limitation. The following day the parties began presenting evidence in the case.

At the conclusion of the evidence, Herndon moved for a directed verdict for several reasons, including the statute of limitation. The court ruled that Counts 3, 4 and 5 related back to the original complaint and were not barred by the statute of limitation. The court directed a verdict as to fraud, punitive damages and attorney fees.

1. In three separate enumerations, Herndon claims that the trial court erred in failing to grant his motion for a directed verdict on Counts 3, 4 and 5 of the amended complaint because they were barred by the statute of limitation. The only counts that Herndon claims were barred were those specifically asserted for the first time in the amended and recast complaint; he does not argue that the allegations of the original complaint were barred. Herndon argues that the trial court erred in failing to grant the motion for a directed verdict on these counts because the statute of limitation had expired and the claims did not relate back to the original complaint.

Count 3 of the amended and recast complaint was entitled "Failure to Repay Loan for First Tractor." This count alleged that in 1991 Heard agreed to finance a loan so that Herndon could buy a tractor. Count 3 alleged that Herndon owed interest payments and fees of $8,575.37 for the tractor and that in 1994 Heard foreclosed on the tractor and had it returned to him. The count then alleges that Herndon returned the tractor to Heard in "deplorable and unusable"

condition and that Heard incurred over $9,000 in expenses to return the tractor to its working condition. Heard claims that his damages from this transaction, including interest, totaled $17,575.37.

Count 4 sets forth Heard's claim that Herndon failed to repay a loan for a second tractor. According to these allegations, in 1993 Herndon asked his uncle to buy a second tractor for him and Heard agreed. Heard then bought the tractor for more than $10,000 and paid $2,787.49 to put the tractor in working condition. Heard claimed that Herndon never repaid him the $12,787.49 plus interest that he owed for this tractor.

Count 5 alleges that Herndon breached his agreement with Heard regarding the 1993/1994 onion crop. According to the complaint, Herndon knowingly and wilfully committed theft by deception by fraudulently inducing Heard to overpay for the onion crop. Heard claimed that he was entitled to recover the overpayment of $25,000 plus interest.

Herndon argues that Heard should have filed each of these counts within the periods of limitation set forth in OCGA § 9-3-25, § 9-3-26 or § 11-2-725. Herndon claims that under any interpretation of the facts, the applicable statutes had expired before Heard filed the amended and recast complaint on October 4, 2001.

In response, Heard argues that the causes of action contained in the amended complaint related back to the original complaint which was filed December 20, 1995, within the statute of limitation. He argues that Counts 3, 4 and 5 of the amended complaint were all included in the original complaint's general claim for $40,394.46. Citing OCGA § 9-11-15 (c) and several cases including *Morris v. Chewning*, 201 Ga. App. 658 (411 SE2d 891) (1991), he claims that the amended complaint sought modified damages, that it arose from the same factual circumstances, and therefore it related back to the filing of the original complaint.

In analyzing this issue, we first note that the statute of limitation had expired under the arguably relevant statutes: OCGA § 9-3-24 (breach of written contract), OCGA § 9-3-25 (breach of contract), OCGA § 9-3-32 (damages for conversion) and OCGA § 11-2-725 (contract for sale under the UCC), before Heard filed the amended complaint. Thus, in order to avoid the statute of limitation, Heard's amended complaint must relate back to his original claims.

With regard to amended pleadings, OCGA § 9-11-15 (c) provides:

Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

The provisions of this section "should be liberally construed to effect its purpose of ameliorating the impact of the statute of limitation. [Cit.]" *Morris v. Chewning*, 201 Ga. App. at 659.

In this case, the allegations of Counts 3 and 4 of the amended complaint arose from the same set of circumstances which were set forth in the original complaint. The original complaint alleged that defendants were indebted to Heard; Counts 3 and 4 simply alleged the specific facts underlying this indebtedness. In other words, these counts of the amended complaint merely specified the claims that Heard originally set forth and there was no prejudice to the defendants in allowing this part of the amendment. Compare *Suwannee Swifty Stores v. NationsBank*, 245 Ga. App. 198, 202 (5) (536 SE2d 299) (2000).

On the other hand, Count 5 of the amended complaint did not relate back to the original complaint. In this count Heard set forth the new claim of theft by deception, which had not been previously alleged in the almost six years the suit had been pending. Similarly, in this count Heard raised completely new allegations about the 1993/1994 onion crop; he claimed that Herndon lied to him and pocketed the overpayment from his fraud during their interactions with respect to that year's crop. The original complaint did not contain any reference to the 1993/1994 onion crop, and we find that the amended allegations of Count 5 did not relate back. See generally *Suwannee Swifty Stores v. NationsBank*, 245 Ga. App. at 202; *Cole v. Atlanta Gas Light Co.*, 144 Ga. App. 575 (241 SE2d 462) (1978).

2. In two other enumerations, Herndon claims that the trial court erred in failing to grant his motion for directed verdict on Counts 5 and 6 of the amended complaint because Heard did not carry the burden of proof with respect to his claim for damages arising out of the 1994 or the 1995 onion crop.

Our decision that the allegations of Count 5 do not relate back to the filing of the complaint resolves Herndon's argument with respect to the allegations regarding the 1994 crop. And because there was a general verdict in this case, this reversal as to Count 5 will necessitate a retrial; thus, we will not address Herndon's arguments with respect to Count 6. Nevertheless, upon retrial, we remind the parties and the trial court of the requirements of proof regarding loss of expected profits. See *Morey v. Brown Milling Co.*, 220 Ga. App. 256, 259 (6) (469 SE2d 387) (1996).

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Barnes, J., concur.*

ON MOTION FOR RECONSIDERATION.

On motion for reconsideration appellee Heard argues that Herndon waived the defense of the statute of limitation. Although

not explicitly addressed in the opinion, we considered and rejected this argument in reaching our conclusion. The claims to which Herndon asserted this defense were not those in the original complaint, filed on December 20, 1995, but were raised in an amended complaint, which Heard filed on October 4, 2001.

Although there is no requirement that a party file an answer to an amended complaint, see OCGA § 9-11-15, OCGA § 9-11-8 requires affirmative defenses, like the statute of limitation defense, to be raised in a "pleading to a preceding pleading." "The purpose of the requirement that affirmative defenses be pleaded is to prevent surprise and to give the opposing party fair notice of what he must meet as a defense." (Citations and punctuation omitted.) *Hathaway v. Bishop*, 214 Ga. App. 870, 872 (2) (449 SE2d 318) (1994).

In this case, Herndon raised the statute of limitation argument at the beginning of the transcribed hearing the court held before trial began on February 25, 2002. Heard objected, claiming that because Herndon had not previously raised the defense, he had waived it. Herndon responded by stating that he had told Heard "a month ago" about the defense and that he had informed the court two weeks earlier about his intention of raising the defense. Heard did not, nor does he now, claim that he was surprised in any manner or that he suffered any prejudice from Herndon's failure to raise this defense in a written pleading before the hearing. The day after the hearing, before any evidence in the case had been presented, Herndon filed a document entitled "Affirmative Defenses."

Given the specific facts here, Herndon did not waive the defense. This court has held that the failure to plead an affirmative defense is immaterial if evidence of the defense is introduced and not objected to for failure to plead it, *and no surprise is claimed. Bowers v. Howell*, 203 Ga. App. 636 (417 SE2d 392) (1992). And, unlike the situation in *Gaul v. Kennedy*, 246 Ga. 290 (271 SE2d 196) (1980), in this case there was no pretrial order entered; similarly, there was no transcription of any pretrial conference. See *Hathaway v. Bishop*, 214 Ga. App. at 871 (2) (even after pretrial order entered, the omission of affirmative defense was "not controlling if evidence pertaining to the issue is introduced without objection, the opposing party is not unfairly surprised, and the issue is actually litigated"); see also *Spafford v. Maseroni*, 186 Ga. App. 290 (367 SE2d 102) (1988); compare *Hansford v. Robinson*, 255 Ga. 530 (1) (340 SE2d 614) (1986).

*Motion for reconsideration denied.*

DECIDED JUNE 23, 2003 —
RECONSIDERATION DENIED JULY 15, 2003 —

*Smith & Jenkins, Wilson R. Smith,* for appellants.
*Sell & Melton, Kevin T. Brown, Stephen R. Sullivan,* for appellee.