A10A0445. MARTIS v. THE STATE.

(699 SE2d 349)

SMITH, Presiding Judge.

A jury found Marc Martis guilty of trafficking in methamphetamine, possession of methamphetamine, possession of methamphetamine by ingestion, and possession of cocaine by ingestion. Following the denial of his motion for new trial, Martis appeals, citing several claims of error. Having reviewed these claims, we discern no error and affirm.

1. Martis contends that the trial court erred in denying his motion to suppress. He argues that there was no probable cause to support the issuance of a warrant to search his residence. "In reviewing a trial court's holding on a motion to suppress, we construe the evidence most favorably to uphold the trial court's judgment and do not disturb its findings if there is any evidence to support them."

> In deciding whether an affidavit creates sufficient probable cause for the issuance of a warrant, the issuing magistrate or judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Accordingly, we look to the totality of the circumstances in evaluating the legality of a search warrant.

(Citations, punctuation and footnotes omitted.) *Spaeth v. State*, 293 Ga. App. 608, 610 (667 SE2d 449) (2008).

An agent with the Bartow County Sheriff's Office testified that he received information from a confidential informant that Martis was manufacturing methamphetamine in a building behind his house. The agent knew the informant from his "experience working narcotics cases" and had received reliable information from him in the past. The informant also told the agent that a man driving a green Tahoe assisted Martis with the manufacturing, and that

Martis "waits until late at night after his children are asleep before going to the building and manufacturing meth." The agent confirmed that Martis resided at the address provided to him by the informant, and testified that he had observed children at the residence as stated by the confidential informant.

The agent testified further that the informant told him that someone named David McCallister also frequented Martis's residence. The agent was familiar with McCallister because of McCallister's prior arrests for manufacturing methamphetamine. The confidential informant explained to the agent that Martis "sells some of the methamphetamine that he makes, but only to a small group of people that he trusts . . . and only does a . . . 'half cook at a time.' "

Three months later, the agent received information from Lonnie Poole, who had been arrested for manufacturing methamphetamine. Poole told the agent that he had assisted Martis with manufacturing methamphetamine at Martis's home, and that McCallister taught Poole how to manufacture methamphetamine. The agent discovered that Poole drove a green Tahoe as observed by the confidential informant.

The agent went to Martis's residence where he discovered a large piece of discolored tubing that was attached to the door frame of the storage building in the back of Martis's home. The tubing wound from the doorframe up to the roof of the building. The agent testified that the tubing was of the type used for manufacturing methamphetamine at various stages. Based on this information, the agent applied to a magistrate for a warrant to search Martis's residence.

In this case, the information given by the confidential informant was corroborated by the agent. See *Bain v. State*, 258 Ga. App. 440, 443-444 (1) (b) (574 SE2d 590) (2002) ("the information corroborated must include a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, . . . that is, inside information not available to the general public"). The agent confirmed that the home was Martis's residence, observed the tubing on the outside of the storage building, and was able to confirm that someone with a green Tahoe was an acquaintance of Martis. The information provided by the confidential informant was also corroborated by Poole, who provided the information against his penal interest. Although Poole was essentially an informant of unknown reliability, "the circumstances under which the statements were made provide the necessary indicia of reliability." *Victrum v. State*, 203 Ga. App. 377, 379 (2) (416 SE2d 740) (1992) ("When one makes an admission against his own penal interest, he tends to be telling the truth.") (citations and punctuation omitted).

The information presented to the magistrate provided a suffi-

cient basis to determine that it was reliable and supported the issuance of the search warrant. Under these circumstances, the trial court did not err in denying Martis's motion to suppress. See *Bain*, supra, 258 Ga. App. at 443-444 (1) (b).[1]

2. Martis contends that the evidence was insufficient to sustain his conviction for trafficking in methamphetamine.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the [S]tate's case, this Court will uphold the jury's verdict.

(Citations, punctuation and footnote omitted.) *Gentry v. State*, 281 Ga. App. 315, 319 (2) (635 SE2d 782) (2006).

Viewed in this light, the evidence showed that officers arrived at Martis's home to execute a search warrant. Immediately upon approaching the storage building in the back of Martis's home, officers smelled a strong chemical odor consistent with the manufacture of methamphetamine. The storage building had no bathroom or running water, and an officer testified that based on the size of the building, he "didn't believe that anybody would be actually living in that structure." Inside the building, officers found items commonly used for manufacturing methamphetamine including the tubing attached to the door stretching to the roof of the building, a large ventilation tube "that was run to the outside that was hooked to a ventilation fan in the ceiling," a radio scanner, a handheld radio, sandwich baggies, a trash can containing stained paper towels, pH strips, a microwave, torches, a plastic funnel, discolored tubing, a

---

[1] Martis argues further that there was "no in[-]court testimony justifying the issuance of the search warrant." He points to Poole's testimony during the hearing on the motion to suppress where Poole stated only that he told the agent he knew Martis. Although Poole denied his earlier statements to the agent, the issue of his credibility was for the trial court. See generally *Smith v. State*, 237 Ga. App. 616, 618 (2) (516 SE2d 319) (1999) (in ruling on motion to suppress, trial court's findings on credibility accepted unless clearly erroneous). Martis makes the same argument with regard to the confidential informant's testimony given at trial that he had never seen Martis manufacture methamphetamine and that he did not inform the agent Martis was manufacturing the drug. But the confidential informant did not testify at the hearing on the motion to suppress. His recantation was therefore not before the trial court prior to its ruling on the motion to suppress.

razorblade containing a white residue that tested positive for ephedrine, and a "burn barrel" containing used matchbooks. Inside the residence, officers found pH strips, a small scale, cut straws, ziplock baggies with the ends cut off, a hollowed out ink pen, an instruction manual on how to produce methamphetamine, and a plastic container of what was determined to be methamphetamine.

Martis arrived home while the search was being conducted and was arrested. Officers obtained a search warrant to get a sample of Martis's urine. Martis's urine tested positive for methamphetamine and cocaine.[2]

Construed in favor of the jury's verdict, the evidence presented here was sufficient for a rational trier of fact to find Martis guilty of trafficking in methamphetamine beyond a reasonable doubt. See *Gentry*, supra, 281 Ga. App. at 319-321 (2) (a); *Wesson v. State*, 279 Ga. App. 428, 429-430 (1) (631 SE2d 451) (2006); OCGA § 16-13-31 (f) ("Any person who knowingly manufactures methamphetamine, amphetamine, or any mixture containing either methamphetamine or amphetamine, as described in Schedule II, in violation of this article commits the felony offense of trafficking methamphetamine or amphetamine. . . .").

3. Martis complains that the trial court failed to properly recharge the jury. During deliberations, the jury sent a question to the court asking: "can you clarify the charge to the jury, in particular if knowledgeable [sic] of manufacturing equals . . . participating in manufacturing/trafficking[?]" Trial counsel requested that the court recharge the jury on mere presence and agreed with the State that the court should also recharge on parties to a crime. The trial court then recharged the jury on parties to a crime and mere presence.[3] Less than 15 minutes later, the jury requested that they be given

---

[2] Following his arrest, Martis gave a statement to police that he: likes to use methamphetamine but had not done so in a month, did not know how to manufacture the drug, allowed a man named Lonnie Poole and his girlfriend to stay in the building, and had observed Poole manufacture methamphetamine, but never purchased any of the items Poole used to manufacture methamphetamine. Martis stated further that his ex-wife left him for the confidential informant who lived with Poole. He also explained to officers that he had downloaded instructions on how to make methamphetamine from the internet "because he was curious."

[3] The court charged the jury:

Every party to a crime may be charged with and convicted of commission of the crime. A person is a party to the crime only if that person directly commits the crime or intentionally helps in the commission of the crime or intentionally advises, encourages, hires, counsels, or procures another to commit the crime. I charge you a jury is not authorized to find a person who was merely present at the scene of the commission of a crime at the time of its perpetration guilty of consent in and concurrence in the commission of the crime, unless the evidence shows beyond a reasonable doubt that such person committed the alleged crime, helped in the actual perpetration of the crime, or participated in the criminal endeavor.

the recharge in writing. Both trial counsel and the State urged the court not to send out the written recharge and the court in turn refused the jury's request.

While the court and both counsel were discussing whether to allow the written recharge to go to the jury room, the jury submitted a second question to the court: "[D]id the defendant actual [sic] mix up the drugs physically versus the defendant knowing a crime is being committed on his property; does this mean the same?" Trial counsel stated: "[Y]our Honor, I think [sic] goes directly back to just a mere presence. I would just ask Your Honor to — not even re-instruct, basically just tell them to consider the charge the Court has given them already." The court called the jury back into the courtroom and instructed them that they must "consider all of the evidence as a whole . . . and the Court's charge as a whole in your deliberations and reach your verdict."

After a short break, the jury sent a third question to the court: "[P]lease reread charge pertaining to . . . is knowledge equal to physical involvement in manufacturing . . . (go slow)." Trial counsel requested the court to again instruct the jury on mere presence and parties to a crime "at a slower rate." The court then recharged the jury on party to a crime and mere presence a second time. The court also repeated its initial instruction on circumstantial and direct evidence.

After the jury retired to the jury room once again, the court asked both counsel for suggestions "as to what the Court might charge the jury to more directly address their issue." Trial counsel suggested that the court allow the written instructions to go out with the jury, the State disagreed, and the trial court did not change its earlier ruling that the jury would not receive written instructions.

Less than 15 minutes later, the jury requested the court to again instruct them on parties to a crime. The court instructed the jury on parties to a crime for yet a third time. Three minutes later, the jury returned a verdict of guilty on all counts.

Although Martis made no request for an instruction on knowledge during the colloquy with the court and following the many recharges, he now on appeal argues that an instruction on knowledge as set forth in *Eckman v. State*, 274 Ga. 63, 67 (3) (a) (548 SE2d 310) (2001), would have properly addressed the jury's questions. He contends that he was unfairly prejudiced by the court's failure to properly instruct the jury.

> When a jury requests a recharge on a particular point, the trial court has the discretion to recharge in full or only as to the points requested. Our review is limited to determining whether that discretion was abused, taking into account the

sensitive nature of the judge's responsibility at this stage of the trial and the duty of the trial judge to provide impartial and effective guidance on the law for the jury to follow in its deliberations. Furthermore, the Supreme Court of Georgia has held that on recharge, it is not necessary to cover the subject in toto.

(Citations and punctuation omitted.) *Branford v. State*, 299 Ga. App. 890, 893 (5) (685 SE2d 731) (2009).

Here, the court fully instructed the jury in its initial instruction on the elements of the crimes charged including that trafficking requires a defendant to knowingly manufacture. The jury's first and second questions concerned whether "knowingly manufactures" means participating in the manufacturing. The court's recharge to the jury on mere presence and parties to a crime sufficiently addressed the jury's question. See, e.g., *Smallwood v. State*, 296 Ga. App. 16, 25 (4) (e) (673 SE2d 537) (2009) (recharge to jury that included mere presence was sufficient to address jury's question concerning whether possession means knowledge). The jury's remaining questions were simply requests for the recharge in writing, and two repeated requests for instructions on parties to a crime. Under these circumstances, we cannot say that the trial court abused its discretion in its recharges to the jury. See *Metts v. State*, 297 Ga. App. 330, 338 (8) (677 SE2d 377) (2009).

4. Martis contends that the trial court erroneously informed him that if he were to be convicted of attempting to traffick in methamphetamine, he would be subject to the minimum mandatory sentencing provisions of OCGA § 16-13-31 (f). Martis requested a jury instruction on attempt to manufacture methamphetamine. Following some discussion between trial counsel and the court concerning whether manufacturing methamphetamine is a lesser included offense of trafficking in methamphetamine, the trial court stated that a "conviction for attempt does not reduce the sentence," and that "if [Martis] is convicted of attempting manufacturing he's not going — he's going to be facing the same prison time, but he's not facing a $200,000 fine." Trial counsel insisted to the court that its conclusion was incorrect, but nevertheless withdrew his request for an instruction on attempt.

This court is an appellate court for the correction of errors of law made by the trial court. *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999). "An error of law has as its basis a specific ruling made by the trial court." Id. The trial court's hypothetical conclusion with regard to what it believed would be the mandatory sentence *if* Martis were to be convicted of attempt does not constitute a specific ruling for review by this court. Although counsel's action in withdrawing the

request for an instruction on attempt even though he believed the court's conclusion was in error could be the basis for an ineffective assistance claim, Martis makes no such claim here on appeal, and there has been no ruling by the trial court for this court to review. We therefore find no merit in this claim of alleged error.

5. Martis argues that the trial court erred in denying his motion for mistrial after the prosecutor commented on his refusal to take a blood or urine test. He contends that this was a violation of the Fifth Amendment right to remain silent. During trial, the prosecutor asked an officer if Martis agreed or refused to give a blood or urine sample. The witness responded, "He refused." Trial counsel approached the bench and moved for a mistrial. After some discussion, the trial court denied the motion but instructed the jury to disregard the question and answer.

Even if we assume the officer's testimony was a comment on Martis's right to remain silent, but see *Allen v. State*, 254 Ga. 433, 434 (1) (c) (330 SE2d 588) (1985), we find no error here in light of the overwhelming evidence presented and the trial court's instruction to the jury to disregard the question and answer. See, e.g., *Caylor v. State*, 255 Ga. App. 362, 366 (3) (566 SE2d 33) (2002) (in light of overwhelming evidence of guilt, no prejudice from trial counsel's failure to raise Fifth Amendment objection). The trial court therefore did not abuse its discretion in denying Martis's motion for mistrial.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED JULY 8, 2010.

*Samir J. Patel*, for appellant.
*T. Joseph Campbell, District Attorney, Richard A. Hull, Assistant District Attorney*, for appellee.