**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2013**

# In the Court of Appeals of Georgia

A13A0189. HUNTER et al. v. EMORY-ADVENTIST, INC.

BRANCH, Judge.

In this medical malpractice action, the defendant hospital obtained summary judgment on the grounds that it did not employ the treating physician and that it was protected from vicarious liability because, in compliance with Georgia law, it posted a notice in a public area of the hospital to the effect that some or all of the health care professionals performing services at the hospital were independent contractors. On appeal, the plaintiff contends an issue of fact remains as to whether the notice was located in a public area of the hospital. The plaintiff also appeals the denial of her

motion to add the treating physician's true employer as a defendant. For the reasons stated below, we affirm.[1]

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

Construed in favor of the plaintiff, the material facts relevant to this appeal are that on December 31, 2005, Charles Hunter was admitted to Emory-Adventist, Inc. d/b/a Emory-Adventist Hospital ("EAH"), "with a previous cardiac history and symptoms of chest pain, shortness of breath, and urinary difficulties" and he was eventually assigned to be treated by Dr. Michaele Brown, the attending physician at EAH emergency room. *Hunter*, supra at 215. It is undisputed that during Hunter's entire course of treatment, Brown was employed by Cobb Medical Associates, LLC ("Cobb Medical"), and not EAH. At the time of Hunter's hospitalization, the hospital had a notice posted in a hallway stating:

---

[1] This is the second appearance of this case in this Court. See *Emory-Adventist, Inc. v. Hunter*, 301 Ga. App. 215 (687 SE2d 267) (2009).

2

NOTICE

> Some or all of the health care professionals performing services in this hospital are independent contractors and are not hospital agents or employees. Independent contractors are responsible for their own actions and the hospital shall not be liable for the acts or omissions of any such independent contractors.

It is alleged that Brown failed to properly treat Hunter for his heart condition and that, as a consequence, he died of a heart attack on January 2, 2006.

On December 31, 2007, almost two years after Hunter's death, Laura Hunter, the decedent's widow, filed suit against, among others,[2] Brown and EAH. In its answer, EAH asserted that it was not a proper party to the suit. On April 2, 2008, Brown served Hunter with responses to discovery requests, which stated that Brown was employed by Cobb Medical at the time of Hunter's treatment. In November 2010 (two and a half years later), EAH moved for summary judgment on the grounds that it was not Brown's employer and that any theory of apparent agency was inapplicable because the notice referenced above was posted in accordance with Georgia law. In April 2011, three years after Brown revealed her actual employer, Hunter moved to

---

[2] Mrs. Hunter also sued Dr. Paul Monte and The Emory Clinic, Inc. None of the issues on appeal involve these parties.

3

add Cobb Medical as a defendant. On July 25, 2011, the trial court held a hearing on both motions, following which the trial court granted EAH's motion for summary judgment and denied Hunter's motion to add Cobb Medical as a defendant. This appeal ensued.

1. OCGA § 51-2-5.1 (b), (c) provides that in the absence of actual agency or an employment relationship between the hospital and the health care professional, hospitals are not liable in tort for the acts or omissions of health care professionals working in the hospital if the hospital has posted a notice "in the form and manner described herein." The statute provides that the notice must

> (1) Be posted conspicuously in the hospital lobby or a public area of the hospital; (2) Contain print at least one inch high; and (3) Provide language substantially similar to the following:

> "Some or all of the health care professionals performing services in this hospital are independent contractors and are not hospital agents or employees. Independent contractors are responsible for their own actions and the hospital shall not be liable for the acts or omissions of any such independent contractors."

4

OCGA § 51-2-5.1 (c).[3] The statute does not define "public area." The adjective "public" has been defined as "[o]pen or available for all to use, share, or enjoy." Black's Law Dictionary (9th ed. 2009).

Hunter contends that Brown was the apparent agent of EAH and that the trial court erred by granting summary judgment in favor of EAH because there is an issue of fact regarding apparent agency and whether the Section 51-2-5.1 notice was "posted conspicuously in a public area of the hospital."

EAH introduced an affidavit by David Ferguson, the EAH construction supervisor who personally affixed the notice to a wall, in which Ferguson avers that the notice contained the proper wording, that the print was at least one inch high, and that the notice was posted on "a wall in a conspicuous public area in EAH." Ferguson deposed that the notice was placed "outside of the trauma room as you walk into the [emergency room]."

Hunter countered with the affidavit of her attorney, Joseph H. King, Jr. King averred that the relevant notice was not in a public area of EAH and that it was "not

---

[3] A complying notice is sufficient "even if the patient or the patient's personal representative did not see or read such notice for any reason, including but not limited to medical condition or language proficiency." OCGA § 51-2-5.1 (e).

5

visible from any public area of the hospital." But the remainder of King's affidavit shows that he had no basis for drawing these conclusions.

King averred that he went to EAH with a videographer in order to photograph the relevant signage; that upon arrival, he was "prevented from proceeding further by hospital attendants who politely asked [him] and [his] videographer to wait for defense counsel in the waiting room area of the lobby"; and that the relevant notice "was in an area which [he] was able to view only because [he] was being escorted by [EAH's] attorney." But none of these facts constitute a basis for concluding which areas of EAH were public areas.

King then averred that defense counsel led him to "areas of the hospital not normally accessible to the public" where he was permitted to take photographs and video. Yet King failed to explain or define what areas of EAH were "accessible to the public" or what he meant by "*normally* accessible to the public"; he also failed to provide any facts regarding the areas of the hospital, such as signage that indicated where the public was allowed or statements by hospital personnel that would support a conclusion about what portions of EAH were "public areas." King averred that defense counsel eventually required King to delete some video and some photographs "because those showed non-public areas, and the hospital administrator had concerns

6

regarding privacy issues." Yet King attached photographs of the relevant notice hanging conspicuously on a wall in a hall of EAH; in other words, he was allowed to keep photographs of the relevant notice. It follows from King's statement that the photographs of the notice were not taken in non-public areas of EAH. Finally, at the hearing, King argued that the hallway in which the notice was posted was open to emergency room patients but not the public in general. His affidavit, however, contains no factual support for this distinction.

In short, King's affidavit is insufficient to create an issue of fact regarding whether the relevant notice was posted in a public area of EAH.

> [C]onclusory allegations by way of an affidavit, unsupported by specific allegations of fact, will not be sufficient to avoid summary judgment. . . . [A]ffidavits containing mere legal conclusions and allegations present no issues of fact on a motion for summary judgment. An affidavit in contravention of a motion for summary judgment must state more than mere conclusions; it must state specific adverse facts.

(Citations and punctuation omitted.) *Swanson v. Lockheed Aircraft Corp.*, 181 Ga. App. 876, 879-880 (1) (b) (354 SE2d 204) (1987). King's affidavit fails to provide a basis for his conclusion that the notice was not posted in a public area. Thus, Hunter has failed to present any evidence to counter the testimony of the construction

7

supervisor of EAH that the notice was posted conspicuously in a public area of the hospital. Because Hunter's only argument that the trial court erred by granting summary judgment lacks merit, we affirm the trial court's grant of summary judgment in favor of EAH.

2. Hunter also argues that OCGA § 51-2-5.1 (b) is unconstitutional, but we do not have jurisdiction to consider this claim because the trial court never ruled on the constitutional claim that Hunter raises on appeal. Hunter initially brought the present appeal before the Supreme Court of Georgia because she sought to challenge the constitutionality of OCGA § 51-2-5.1 (b). The Supreme Court reviewed the record and concluded that it did not have jurisdiction to consider the constitutional issue because the trial court never ruled on that issue below. See *Nathans v. Diamond*, 282 Ga. 804 (654 SE2d 121) (2007). The Supreme Court therefore transferred the case to this Court. The jurisdictional ruling of the Supreme Court controls in this Court as well. See *Baum v. Moore*, 230 Ga. App. 255, 256 (496 SE2d 307) (1998). See also *Bain v. State*, 258 Ga. App. 440, 445-446 (3) (574 SE2d 590) (2002) (unless the trial court specifically rules upon the constitutional issue, there is nothing for this Court to review).

3. Finally, Hunter contends the trial court erred by denying her motion to add Cobb Medical as a party. The trial court held that because the statute of limitations had expired on Hunter's action well before Hunter moved to add Cobb Medical as a party and because Hunter did not show that Cobb Medical received actual notice of the suit prior to the expiration of the statute of limitations, a claim against Cobb Medical would not relate back to the date of the original pleading. The court further held that even if Cobb Medical had received sufficient notice of the action, Hunter's failure to add Cobb Medical "within the statute of limitations constitutes laches." Accordingly, the trial court denied Hunter's motion to add Cobb Medical. On appeal, Hunter challenges both of the grounds upon which the trial court relied in support of its ruling.

It is undisputed that the applicable statute of limitations on Hunter's claim of medical malpractice expired days after Hunter filed suit[4] and that Hunter sought to add Cobb Medical as a party over three years later. In order to add a new party defendant after the running of the statute of limitations, a party must show three factors:

---

[4] The statute of limitation for an action for medical malpractice is two years from the injury. OCGA § 9-3-71 (a).

9

(1) That the amendment adding the new defendant arise[s] out of the same facts as the original complaint; (2) That the new defendant had sufficient notice of the action; and (3) That the new defendant knew or should have known that, but for a mistake concerning his identity as a proper party, the action would have been brought against him.

(Citation omitted.) *Robinson v. Piggly Wiggly*, 193 Ga. App.675, 676 (388 SE2d 754) (1989). See also OCGA § 9-11-15 (c).[5] This Court has held that OCGA § 9-11-15 (c) "should be liberally construed to effect its purpose of ameliorating the impact of the statute of limitation." (Citation and punctuation omitted.) *Herndon v. Heard*, 262 Ga. App. 334, 337 (1) (585 SE2d 637) (2003). Also, "[t]he addition of a new party

---

[5] OCGA § 9-11-15 (c) provides:
Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back to the date of the original pleadings if the foregoing provisions are satisfied, and if within the period provided by law for commencing the action against him the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

10

defendant by an amendment to the complaint requires the exercise of discretion by the trial court." (Citation omitted.) *Fontaine v. Home Depot*, 250 Ga. App. 123 (550 SE2d 691) (2001).

The parties do not dispute the first factor – that the proposed claims against Cobb Medical arise out of the same facts as the original complaint.

As for the second factor, OCGA § 9-11-15 (c) provides the plaintiff must show that

> within the period provided by law for commencing the action against him[,] the party to be brought in by amendment . . . has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits.

This Court has held that "[b]y the plain wording of the statute, the required notice is notice of the institution of the action (i.e., notice of the lawsuit itself) and not merely notice of the incidents giving rise to such action." *Harrison v. Golden*, 219 Ga. App. 772, 773 (466 SE2d 890) (1995).[6]

---

[6] "We note that this issue revolves specifically around notice requirements and, as such, is distinguishable from whether a plaintiff who served a defendant after the statute of limitation has expired was diligent such that the late service relates back to the date of filing. See *Allen v. Kahn*, 231 Ga. App. 438 (499 SE2d 164) (1998)." *Tanner's Rome v. Ingram*, 236 Ga. App. 275, 276 (511 SE2d 617) (1999).

11

Hunter has no direct evidence to show that Cobb Medical received notice of the institution of the action before the expiration of the limitation period. Hunter contends, however, that Cobb Medical had sufficient notice to satisfy OCGA § 9-11-15 (c) because Brown, EAH, and Cobb Medical are all covered by the same self-insurance program for professional and general liability insurance operated by the Adventist Health System Liability Trust ("AHSLT"). Hunter argues that therefore notice to Brown and EAH provided Cobb Medical with notice of the institution of the malpractice action.[7]

Hunter's argument begins with the contention that Brown and EAH were provided actual notice of the suit prior to the expiration of the statute of limitations; the appellees dispute that assertion. Hunter asserts that the defendants were served by overnight delivery either the day after suit was filed or the next business day in accordance with OCGA § 9-11-4 (d), which provides a procedure for obtaining waiver of service. But Hunter has not provided any citation to the record to support that assertion, and our own review of the record reveals no such support.

---

[7] Hunter does not argue that notice to Brown of institution of litigation constitutes notice to Cobb Medical of the same merely because Brown is an employee of Cobb Medical.

But even if Brown and EAH had actual notice of the suit prior to expiration of the statute of limitations, and even if Brown, EAH and Cobb Medical were insured by the same carrier, we find no support in the law for the proposition that notice to an insured of the institution of litigation constitutes notice to another party insured by the same carrier. Compare *McNeil v. McCollum*, 276 Ga. App. 882, 887 (1) (625 SE2d 10 (2005) (potential defendant and its carrier had notice of the institution of the action prior to the expiration of the statute of limitation where plaintiff sent letters to potential defendant and its insurance carrier with notice that a complaint would be amended to add them to a suit as defendants). The case law cited by Hunter is distinguishable. *Parks v. Hyundai Motor America*, 258 Ga. App. 876, 882 (575 SE2d 673) (2002) (notice was sufficient to second corporation under OCGA § 9-11-15 (c) because "history of lawsuits against both [ ] entities and the fact that [the proposed party was] the sole shareholder of [the named party] provide strong evidence of notice"); *Fontaine*, supra at 126 (1)("when the original defendant and the defendant which plaintiff proposes to add by amendment are intertwined corporations which both have received notice of an action before the expiration of the statute of limitation, the prejudice that might otherwise exist is negated."); *Tanner's Rome*, supra (plaintiff filed suit against sister corporation of true defendant with the same registered agent;

13

both had notice of lawsuit before expiration of limitation period; and true defendant admitted that it knew or should have known the action should have been brought against it); *Ford v. Olympia Skate Center*, 213 Ga. App. 600, 601-602 (1) (445 S.E.2d 362) (1994) (substitution of correct defendant complied with OCGA § 9-11-15 (c); original complaint was served on personal secretary of president of both correct and incorrect corporate entity and the two entities were closely intertwined, in that they shared the same president, stockholders, bookkeeper, and accountant); *Rich's, Inc. v. Snyder*, 134 Ga. App. 889, 892 (1) (216 SE2d 648) (1975) (addition of correct corporate entity complied with OCGA § 9-11-15 (c) where secretary of both corporations was served with the complaint within statute of limitations and the correct corporate entity was the sole stockholder of the incorrect corporate entity).

In sum, the trial court did not abuse its discretion by concluding that Hunter failed to satisfy the requirements of OCGA § 9-11-15 (c) because she failed to show that Cobb Medical had notice of the institution of the lawsuit prior to the expiration of the statute of limitations. Hunter's remaining arguments are therefore moot.

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur in judgment only*.